**UNITED STATES of America, Appellee,**

v.

**Michael Keith SAMUELS, Appellant.**

**No. 85–2002.**

United States Court of Appeals, Eighth Circuit.

Jan. 9, 1987.

Sylvester James, Jr., Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for appellant.

Robert G. Ulrich, Jr., U.S. Atty., J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for U.S.

Before LAY, Chief Judge, and HEANEY, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN and MAGILL, Circuit Judges.

---

## ORDER DENYING MOTION FOR REHEARING EN BANC.

A request has been made by an active judge of this court for a rehearing en banc; the request is denied for the reason that a majority of circuit judges, who are in regular active service, have failed to vote in favor of it.

ROSS, GIBSON, FAGG, BOWMAN and WOLLMAN, Circuit Judges, would vote in favor of it.

Separate statement of LAY, Chief Judge.

I concur in the denial of rehearing en banc. However, two concerns raised by the unusual posture of this case cause me to separately write.

First, I question the propriety of any active circuit judge requesting a rehearing en banc after a panel opinion has been issued when no party to the litigation has filed a petition for rehearing en banc. There is no express authority for a judge to so act provided in the Federal Rules of Appellate Procedure. Fed.R.App.P. 40(a) explicitly provides for a petitioner to file a petition for rehearing "within 14 days after entry of judgment unless the time is shortened or enlarged by order or by local rule." Moreover, Fed.R.App.P. 35(b) states that "[a] party may suggest the appropriateness of a hearing or rehearing en banc." I realize that our local rules provide that either "a party or judge of this court in regular active service" may request a hearing or rehearing en banc. 8th Cir.Local R. 16(a). However, I suggest that this rule may not be authorized under Fed.R.App.P. 47, which states that "[e]ach court of appeals * * * may from time to time make and amend rules governing its practice not inconsistent with these rules."

The historical facts of this case illustrate the confusion that can arise under the current wording of our Local Rule 16. First, the operation of all of our rules governing appellate procedure is linked with Fed.R. App.P. 41, which directs when our mandate shall issue. Rule 41 reads:

(a) Date of Issuance. The mandate of the court shall issue 21 days after the entry of judgment unless the time is shortened or enlarged by order. A certified copy of the judgment and a copy of the opinion of the court, if any, and any direction as to costs shall constitute the mandate, unless the court directs that a formal mandate issue. The timely *filing of a petition* for rehearing will stay the mandate until disposition of the *petition* unless otherwise ordered by the court. If the petition is denied, the mandate shall issue 7 days after entry of the order denying the petition unless the time is shortened or enlarged by order.

Fed.R.App.P. 41(a) (emphasis added). No order was ever requested to shorten or enlarge the time for issuance of the mandate in this case. However, the clerk of our court did withhold the issuance of the mandate when a judge of this court sua sponte requested a poll of the active judges for a rehearing en banc. Thus, the parties to this date have not been notified that the mandate of the court up to the date of this order has in fact never been issued. Because the parties and the district court erroneously assumed that our mandate had issued within the time limits dictated by Rule 41, on November 26, 1986, based on the panel opinion, a judgment of acquittal by the district court was entered and the defendant released from custody.[1]

The circumstances of this case should caution us as to the propriety and advisability of a rule allowing judges sua sponte to seek rehearing en banc. We have enough work to do without assuming an activist role and becoming advocates. Moreover, I am confident that the United States had good reasons for not seeking a petition for rehearing in this case. Certainly the government stands in our court on the same footing as any other advocate, but

---

1. Since this court's mandate had not issued the judgment of the district court was without jurisdiction and therefore remains void. Because the mandate had not issued, the parties as well as the district court should have verified from the district court docket whether this court's judgment was final before any order was issued.

the government's decision to seek or not seek a rehearing is made with deliberate thought and with a recognized responsibility to the public. Granted, the confusion generated here might have been obviated if an order enlarging the time for the issuance of the mandate was entered and the parties timely notifed. However, parties should presumptively have a right to rely on the time limits as now designated in the federal rules without our actions interfering with the operation of that carefully constructed procedural process.[2]

A second concern is raised by the dissent's reference to the fact that the panel majority included a district judge sitting by designation. The mere fact that a visiting district judge has participated on a panel or has written a decision for this court should not impugn the integrity of that panel's decision in any respect. Every circuit court in the country uses visiting Article III judges to sit on panels during terms of court. This practice is essential in order to efficiently clear our dockets. To suggest that when a visiting judge sits and votes on a panel decision the opinion lacks credibility is to belittle the entire appellate process in federal courts of appeal. This suggestion also plants doubt in the minds of litigants appearing before such a panel as to whether the panel is as competent as any other panel of the court. In some circuits this would mean that almost every panel is suspect, because of their continuing use of visiting judges.[3] When any Article III judges are assigned to our court to assist us, this court is not only grateful for their assistance, but, more importantly, holds out to both litigants and lawyers that the visiting judge is recognized to be as able and competent a judicial officer as any other judge on the court of appeals.

En banc rehearings are never justified because of the makeup of the panels. En bancs are not favored, should be rarely necessary, and should be ordered only when consideration by the full court is necessary to secure or maintain uniformity of our decision or when the proceeding involves a question of exceptional importance. See Fed.R.App.P. 35. This case presents neither ground. The fact that an alleged threat to the President of the United States is involved does not make this case one of exceptional judicial importance. The only issue here for review was whether there exists sufficient evidence to sustain a judgment of conviction and to deprive the defendant of his liberty. With all due respect to my dissenting colleagues, the suggestion that our failure to have a rehearing en banc in this case "casts a shadow on our national conscience" is answered by the force of its own rhetoric; such expressed concern in any case abandons the very essence of judicial neutrality.

ARNOLD, Circuit Judge, concurring in the denial of rehearing en banc.

The issue before the jury at trial was whether appellant Samuels was legally sane when he threatened, in writing, to kill the President. The government presented the testimony of Dr. Clayton Pettipiece, an expert witness, that Samuels was merely manipulative and suffering from a "personality disorder." In his opinion, Samuels was sane, as the law defines that term, when the offense was committed.

It seems to me that this evidence is sufficient to support a jury verdict against Samuels, no matter how strong the other evidence on the point may have been. The jury did not have to believe any of the

---

**2.** Further, although I can only speak of the last 20 years, I am not aware of any decision of a panel of this court being *reheard* en banc where only a judge has requested a rehearing en banc and a party has not so requested it. This historical lesson weighs heavily against the advisability of such a rule.

**3.** If this were a real concern, those circuits with a large number of judges such as the Ninth Circuit, which currently has approximately twenty-five active judges, would face an unsurmountable problem since their en banc panels are determined under a local rule which utilizes only eleven circuit judges. See 9th Cir.Local R. 25 ("The en banc court * * * shall consist of the chief judge of the circuit or the next senior active judge in the absence of the chief judge and ten additional judges to be drawn by lot from the active judges of the Court.")

witnesses. It obviously chose to believe Dr. Pettipiece and disbelieve the others. I do not see how an appellate court can properly label such a decision as irrational. My disquietude at the panel's holding that the evidence was insufficient to support the conviction, is only heightened by the panel's frank description of its own action as "invad[ing] the jury's domain." *United States v. Samuels*, 801 F.2d 1052, 1056 (8th Cir.1986). That is exactly what no court, trial or appellate, should do.

The whole basis of the criminal law is moral. It proceeds on the assumption that most people, most of the time, appreciate the difference between right and wrong and are able to control themselves. Only if this is so does it make moral sense to punish those who violate the law. For the same reason, it makes no sense to punish someone who does not appreciate the difference between right and wrong, or is not able to control himself. So the defense of insanity is a necessary part of our system of criminal justice. But it is open to abuse, and only if treated with healthy skepticism can it be kept within proper bounds. Common sense and good practical judgment of human conduct are essential in this regard, and that is what juries are for. They usually know a phony when they see one, and they are unlikely to be attracted by notions that people have no free choice, or that anyone who does wrong is somehow "disturbed" and not responsible. We should be very slow to override jury verdicts, especially on a subject where the moral judgment of the community is so closely engaged. This is no less true when the government has prevailed. It has just as much right to a fair trial as do criminal defendants.

All these considerations seem basic to me, so basic that I regard the issue as suitable for en banc consideration, especially as the life of the President may be involved. I have nevertheless determined to vote not to rehear the case en banc, and I have done so simply because the United States did not ask us for this relief. This is not, in my view, an abdication of judicial responsibility, but simply giving appropriate recognition to the fact that courts are essentially passive instruments of government. We do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us. The Solicitor General, either personally or through a small, carefully selected staff, decides whether to apply for rehearing en banc. In the present case, the decision not to do so came after we had granted, at the government's request, an extension of time within which to file a petition. I must assume that careful consideration was given to this decision, and that the United States' conclusion that its case should end here is supported by some facts or reasoning not readily apparent to judges who view the case, so to speak, from the outside—for example, that Samuels is not really so dangerous as he seems.

In reaching this conclusion I am fortified by a general distaste for en banc proceedings. They devour enormous amounts of judicial effort, usually (in my opinion) without corresponding benefits. Each judge of course decides for himself how to balance the factors pointing towards or against rehearing en banc in each case. We are different people, with different views of the law, and naturally our weighing of the relevant factors often leads us to different conclusions. I have tried to say enough to explain my reasons for thinking that we should not rehear this case en banc.

FAGG, Circuit Judge, with whom ROSS, JOHN R. GIBSON, and BOWMAN, Circuit Judges, join, dissenting from the denial of rehearing en banc.

Michael Keith Samuels, in a letter, threatened to kill the President of the United States. This threat was a direct violation of 18 U.S.C. § 871(a). Samuels argued he could not be held responsible for his

actions, however, because he was insane at the time he made the threat. A jury rejected Samuels' insanity defense and returned a verdict of guilty.

Despite the jury's traditional function in our judicial system, a panel of this court reversed Samuels' conviction and held as a matter of law the evidence was insufficient to find Samuels sane. The panel reached this result only by doing violence to well-respected legal principles that permit the admission into evidence of expert testimony and weigh heavily in favor of upholding the jury's verdict.

Because the case involves a threat to kill the President of the United States and the panel decision has a strong appearance of error, this court should review the record en banc. The case is particularly appropriate for rehearing on the merits because the two active judges on the panel disagreed, leaving the ultimate panel decision to hinge on the vote of a district court judge sitting by designation. As the tally stands, five judges now vote to deny rehearing en banc: Chief Judge Lay, and Judges Heaney, McMillian, Arnold, and Magill.

I believe each judge on this court embraces the view that presidential safety is fundamental to the constitutional system we are bound to preserve and protect. I also believe a majority of the judges on the court deem this case—involving a direct threat to the President's life—worthy of en banc review. Thus, I can conclude only that the court has based its denial of en banc review on a consideration wholly unrelated to the merits of this case: the Justice Department's decision not to seek rehearing.

Not only is this consideration transparent, it is entirely irrelevant to the question of rehearing on the merits when presidential safety is involved. In the face of no request by the Justice Department for rehearing, we have given only inconsequential weight to the judgment of two active circuit judges, one of whom initiated the request for rehearing and the other who reviewed the record in the case. Further, we have permitted a district court judge sitting by designation effectively to speak for this court on an issue of national concern.

The Justice Department's decision not to seek rehearing may have been a careful and deliberate one. Nevertheless, we cannot permit the Justice Department to dictate the actions of this court. The active judges of this court hold the end responsibility here. We, not the Justice Department, have the duty to correct an erroneous panel decision. The Justice Department's failure to act should never paralyze this court.

Significantly, we are not too busy to rehear en banc several other cases on January 12, 1987. Although the cases involve recurring issues of substantial importance, they do not impress me as having greater importance to our circuit than the safety of our nation's President. Like *Samuels*, each of these cases involves a decision in which the two active judges on the panel disagreed, leaving the final result to turn on the vote of a district court judge sitting by designation. If the active judges are to speak on behalf of the court, we should grant rehearing in *Samuels* as in the other cases. Our en banc hearing schedule could easily accommodate the consideration of *Samuels*.

Essentially, the court is declaring that as a matter of policy we will not initiate en banc review on our own motion. Without question, policy considerations have a legitimate role to play in the internal operating affairs of an appellate court; however, policy should not become an end in itself. Regrettably, that appears to have happened here. To leave this case in its present posture casts a shadow on the national conscience of the court.

Threats to our President are constant. None should be taken lightly. Judicial lethargy has no place here. We do not have to reach far back into our memories to recall the attempted assassinations of President Ronald Reagan (March 30, 1981) and President Gerald R. Ford (September 5 and 22, 1975), and the assassination of President John F. Kennedy (November 22, 1963). Today, Samuels is a free man. I

can only hope the President is not once again at risk.

I would grant rehearing en banc.

WOLLMAN, Circuit Judge, dissenting from the denial of rehearing en banc.

I would grant rehearing en banc.