[Cite as *State v. Hamberg*, 2015-Ohio-5074.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140536 |
| | | TRIAL NO. B-1201167 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| DANIEL HAMBERG, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 9, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Merlyn D. Shiverdecker*, for Defendant-Appellant.

Please note: we have removed this case from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1}   Defendant-appellant Daniel Hamberg appeals from his convictions for aggravated murder, murder, felonious assault, and endangering children and from the Hamilton County Common Pleas Court's judgment overruling his "Motion for New Trial Limited to Sentencing."  We dismiss the appeal from the judgment of conviction, and we reverse the judgment overruling his postconviction motion and remand for a hearing.

{¶2}   Hamberg was indicted in March 2012 for aggravated murder, murder, felonious assault, and endangering children, for the death of his girlfriend's 14-month-old son.  In February 2014, he withdrew his not-guilty plea and entered a guilty plea to involuntary manslaughter in violation of R.C. 2903.04(A), with the underlying felony of endangering children in violation of R.C. 2919.22(A), in exchange for dismissal of the remaining charges.  On March 5, the trial court accepted his plea, found him guilty, and scheduled a sentencing hearing for April 1, 2014.  At the sentencing hearing, the court imposed the maximum prison sentence of eleven years and the maximum fine of $20,000.  The judgment of conviction was journalized on April 4.

{¶3}   On April 2, 2014, two days before the judgment of conviction was journalized, the trial judge had appeared on a local radio show and had talked extensively about Hamberg's case.  Hamberg submitted a transcript of the judge's radio appearance in support of postconviction motions filed with the common pleas court on April 18, captioned, "Motion for New Trial Limited to Sentencing" and "Motion for Recusal."  In his motions, he sought a new sentencing hearing before a different judge on the grounds that the trial court had sentenced him for another offense with which he had been charged rather than the offense to which he had

2

pleaded, and that the court, in sentencing him, had disregarded R.C. 2929.11 and 2929.12, had displayed "clear bias and prejudice," had "considered * * * [and drawn] impermissible conclusions based on facts not in the record," and had "made improper and false allegations" concerning the defense's expert witnesses. On May 8, the state filed its response to the motions. The court did not decide the "Motion for Recusal," but on August 20, overruled the "Motion for New Trial."

{¶4} On September 15, Hamberg filed a notice of appeal from both the April 4 judgment of conviction and the August 20 entry overruling his "Motion for New Trial."

### The Appeal is Dismissed in Part

{¶5} We note at the outset that while Hamberg timely appealed the overruling of his "Motion for New Trial," he failed to perfect a direct appeal from his judgment of conviction. A notice of appeal must be filed within 30 days of the entry of the judgment or order appealed. App.R. 4(A). Hamberg's September 15, 2014 notice of appeal was filed within 30 days of the August 20 entry overruling his "Motion for New Trial," but more than five months after his April 4 judgment of conviction was journalized.

{¶6} Although the time for filing a direct appeal from a judgment of conviction may be extended by the filing of a "timely and appropriate" motion for a new trial, Hamberg's "Motion for New Trial" did not toll the time for filing his direct appeal, because it was not "appropriate."

{¶7} Hamberg had been convicted upon a guilty plea, and a Crim.R. 33 motion for a new trial does not provide a means for challenging a conviction resulting from a guilty plea. *State v. Frohner*, 150 Ohio St. 53, 80 N.E.2d 868 (1948), paragraph thirteen of the syllabus.

{¶8} The failure to timely file a notice of appeal deprives an appellate court of jurisdiction to entertain the appeal. *State ex rel. Curran v. Brookes*, 142 Ohio St. 107, 50 N.E.2d 995 (1943), paragraph seven of the syllabus. Hamberg did not directly appeal his judgment of conviction within the 30 days required by App.R. 4(A), and we, therefore, dismiss this appeal to the extent that it was taken from Hamberg's April 4 judgment of conviction. *See State v. Hughes*, 1st Dist. Hamilton No. C-780158, 1978 Ohio App. LEXIS 7762 (Dec. 20, 1978) (dismissing a direct appeal for lack of jurisdiction, because the appeal was not filed within 30 days of the judgment of conviction and the appeal time was not extended by appellant's Crim.R. 33 motion for a new trial challenging his conviction upon a no-contest plea).

### The Motion was Reviewable under the Postconviction Statutes

{¶9} In his timely appeal from the overruling of his "Motion for New Trial," Hamberg presents two assignments of error that restate the grounds for relief advanced in the motion and thus, read together, challenge the denial of the relief sought. The challenge is well taken.

{¶10} In his motion, Hamberg expressly sought not to withdraw his guilty plea, but to be resentenced. He captioned his motion, "Motion for New Trial," and invoked Crim.R. 33. But, again, a Crim.R. 33 motion for a new trial does not provide a means for challenging a conviction entered upon a guilty plea. *Frohner*, 150 Ohio St. 53, 80 N.E.2d 868, at paragraph thirteen of the syllabus. And when, as here, a motion invokes a rule or statute that does not afford the relief sought, the motion may be "recast * * * into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12 and syllabus (holding that a trial court "may recast an appellant's motion for relief from judgment as a petition for postconviction

4

relief [even] when the motion has been unambiguously presented as a Civ.R. 60(B) motion"). *Accord State v. Ingles*, 1st Dist. Hamilton No. C-100297, 2011-Ohio-2901, ¶ 3. *See State v. Wurzelbacher*, 1st Dist. Hamilton No. C-130011, 2013-Ohio-4009, ¶ 4-6; *State v. Braggs*, 1st Dist. Hamilton No. C-130073, 2013-Ohio-3364, ¶ 4-8 (following *Schlee* to recast a declaratory-judgment motion as a postconviction petition). *Compare State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, (holding that a Crim.R. 32.1 motion to withdraw a guilty or no-contest plea may not be recast as a postconviction petition, because "[p]ostsentence motions to withdraw guilty or no contest pleas and postconviction relief petitions exist independently").

{¶11} R.C. 2953.21 et seq. govern the proceedings on a petition for postconviction relief and provide the procedure for collaterally challenging a judgment of conviction based on a violation of constitutional rights in the proceedings resulting in the conviction. R.C. 2953.21(A)(1). The postconviction statutes provide "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case." R.C. 2953.21(J).

{¶12} Hamberg's motion was filed after his conviction, was supported by evidence outside the record of the proceedings leading to his conviction, and sought an order vacating his sentence based on an alleged violation of constitutional rights. Therefore, the common pleas court should have reviewed the motion under the standards provided by the postconviction statutes.

### *The Court Erred in Denying Postconviction Relief without a Hearing*

{¶13} A postconviction petitioner bears the initial burden of demonstrating, through the petition, evidence outside the record, and the record of the case, "substantive grounds for relief." R.C. 2953.21(C). The petition is subject to dismissal

without a hearing if it is not supported by evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *Id.*; *State v. Pankey*, 68 Ohio St.2d 58, 58-59, 428 N.E.2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E). In the case before us, the trial court denied Hamberg's motion without a hearing.

{¶14} *Due process.* The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a fair trial before a fair tribunal. *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Fairness for purposes of the due-process guarantee "requires the absence of actual bias in the trial of cases" and "a system of law [that] endeavor[s] to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

{¶15} *The sentencing purposes and the seriousness-and-recidivism factors.* R.C. 2929.11 requires a trial court, in imposing a felony sentence, "to be guided by the overriding purposes of felony sentencing." R.C. 2929.12 confers upon the trial court the "discretion to determine the most effective way to comply with the purposes and principles of sentencing" and sets forth multiple factors that the court, in exercising its discretion, must "consider." One of these factors is "the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in [his offense]." R.C. 2929.12(F).

{**¶16**}  To comply with the sentencing purposes, "it is presumed that a prison term is necessary" for a first-degree felony.  R.C. 2929.13(D)(1).  But the sentencing court may impose a community-control sanction instead of a prison term upon finding that a community-control sanction would "adequately punish the offender and protect the public from future crime, because the applicable factors * * * indicating a lesser likelihood of recidivism outweigh the applicable factors * * * indicating a greater likelihood of recidivism," and would "not demean the seriousness of the offense, because" the applicable less-serious factors "outweigh" the applicable more-serious factors.  R.C. 2929.13(D)(2).

{**¶17**}  The court is not required to make specific findings on the record to show that it considered the applicable factors.  *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).  In the absence of an affirmative demonstration to the contrary, we may presume from even a silent record that the court considered the factors.  *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 24.

{**¶18**}  ***Hamberg's sentencing.***  Hamberg pleaded guilty to the first-degree felony of involuntary manslaughter in violation of R.C. 2903.04(A), with the underlying felony of endangering children in violation of R.C. 2919.22(A).  Thus, by his plea, he admitted to causing the victim's death as a proximate result of creating a substantial risk to the health or safety of a child under his control by violating a duty of care.  At the plea hearing, the assistant prosecuting attorney offered nothing further.

{**¶19**}  In his sentencing memorandum, Hamberg offered his version of the events preceding the victim's death, along with the reports of seven medical experts

and an injury-causation expert who supported his version of the events, records concerning his military service, and letters attesting to his character.

{¶20} According to Hamberg, he and the victim's mother had lived together for several months. On February 1, 2012, Hamberg brought the victim home from daycare and took him upstairs to change his diaper. Preceding the victim back down the stairs, Hamberg turned to see the victim fall, strike his head on a step, and tumble a few more steps before Hamberg caught him. Hamberg called 911 and reported that the victim had fallen down the stairs, appeared to be having a seizure, and was nonresponsive and gasping for air. The victim's mother confirmed to the police that the victim had regularly jumped from the stairs to her or Hamberg. Hamberg told the police that the victim had surprised him by jumping from the top step.

{¶21} The expert reports submitted by Hamberg were based upon the relevant police reports, photographs, and medical records. The experts found no evidence of nonaccidental trauma and concluded that the victim's brain injury had resulted from a single incident of trauma, and that the injury was consistent with the victim hitting his head in an accidental fall on the carpeted stairs. Hamberg's experts also concluded that death had not likely been caused by the brain injury, but instead by the unusual complication of significant cerebral swelling influenced greatly by a lack of oxygen due to seizures.

{¶22} The sentencing memorandum also included a detailed account of Hamberg's four years in the Marines, the disabling injuries he suffered while serving in Afghanistan, and his honorable discharge with a 100-percent service-related disability. Finally, the memorandum included letters attesting to his character as a loving and caring father to his daughter and as a father-figure to the victim.

8

{¶23} The court ordered a presentence investigation. In that report, Hamberg stated that he had not used alcohol or drugs in over two years. The report showed misdemeanor assault and theft convictions from ten years earlier and a number of traffic violations as recently as two years earlier. In her victim-impact statement, the victim's mother asserted that Hamberg had "abused alcohol and smoked marijuana on a daily basis," that his version of events was "not true," that he had "violently abused [the victim] out of frustration" while attempting to change his diaper, and for that reason, he should spend the rest of his life in prison.

{¶24} At the sentencing hearing, the assistant prosecuting attorney argued that "the severity of the injury in this case, the harm caused to the family and to the child, demands nothing less than the maximum sentence."

{¶25} The trial court then proceeded to sentence Hamberg to the maximum sentence and fine permitted for the crime to which Hamberg pleaded. The court, however, made statements in the course of sentencing that raises the issue of due process and compliance with R.C. 2929.11 and 2929.12. After acknowledging that Hamberg had pleaded to the offense and had the support of his family, and having "considered everything," including the sentencing memorandum and defense counsel's arguments, the court still had "a lot to say on this matter":

> I don't want anyone to lose sight of the fact that a baby is no longer with us as a result of your actions—or inaction. The point is, a child was in your care and that child is gone * * *. To me there is nothing worse * * *. I can handle just about everything. But when it comes to the death of children at the hands of caretakers, I have a really, really, really difficult time with it. * * * [W]hen a baby's life is

lost, I have absolutely zero sympathy for the perpetrator.  * * * [M]y regret about this, is that[] the most that I can give you * * * is 11 years.

{¶26} *The trial judge's radio appearance.*  The day following the sentencing hearing, but prior to the court's journalization of the sentence, the trial judge appeared on a local radio show to talk about, in the words of the host, "this American War Hero, Daniel Hamberg, that you sentenced yesterday to 11 years in jail."   The remarks made by the trial judge indicated that facts not in the record influenced Hamberg's sentence.  When asked "why [the case came] down the way it did," the judge offered the following remarks:

> [T]he child had died of severe traumatic head injury.  * * * [I]t came from a number of different things, but they can't pinpoint exactly what it was.  * * * [A] lot of people know that as Shaken Baby Syndrome. * * * I don't know that that was the case here.  I think the kid was just beat.

{¶27}  Asked what consideration she gave in sentencing to Hamberg's status as a permanently disabled "American War Hero," the judge stated,

> I looked at everything * * * [the] sentencing memo * * * the Presentence Investigation Report * * * the Victim Impact Statement, but the bottom line is * * * a baby is dead at his hands.

> He admitted to it.  He pled to it, and as result of that, I don't really care what you've done, you've killed a child.  * * * [I]n this particular case, I don't care if he had been President of the United States, he's perfectly capable of behaving in an appropriate manner, and beating a child and admitting to beating that child, and pleading to that is not okay.  So I did the most I could do and that was 11 years.

{¶28} Finally, the trial judge also discussed her disregard of the expert testimony presented by Hamberg when asked about the expert reports indicating injuries consistent with the victim falling down stairs: "But anything--I mean, yeah, I know. But you can get an expert to say anything."

{¶29} *R.C. 2953.21(E) mandates a hearing.* A fair trial before a fair court is a basic requirement of due process. The sentencing statutes conferred upon the trial court the discretion to determine an appropriate sentence in Hamberg's case. But the trial court, in exercising that discretion, was required to give due consideration to the relevant sentencing purposes, principles, and factors. R.C. 2929.11, 2929.12, and 2929.13.

{¶30} "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). An "arbitrary" decision is one "founded on prejudice or preference rather than on reason or fact." *State v. Clark*, 1st Dist. Hamilton No. C-130672, 2014-Ohio-3612, ¶ 8, quoting *Black's Law Dictionary* 112 (8th Ed.2004). Thus, a trial court abuses its discretion when it disregards the sentencing statutes and instead bases its decision on prejudice or preference. *Clark* at ¶ 8 (holding that the trial court abused its discretion when it denied the statutorily eligible defendant's petition for expungement based on its arbitrary policy to deny all applications to expunge domestic-violence convictions); *State v. Godfrey*, 183 Ohio App.3d 344, 2009-Ohio-3726, 916 N.E.2d 143, ¶ 4-6 (1st Dist.) (holding that the trial court's failure, in resentencing defendant, to consider the statutory factors or a lesser prison term was not excused because his "conscience" would not allow him to change a sentence imposed for a violent offense). An "unreasonable" decision is one that "lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-

2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Thus, a court abuses its discretion when it effectively sentences the defendant for a crime that was not proven. *Columbus v. Jones*, 39 Ohio App.3d 87, 89-90, 529 N.E.2d 947 (10th Dist.1987) (holding that the court abused its discretion in imposing a more severe sentence upon defendant's conviction of a lesser offense upon its belief that the jury was mistaken in acquitting him of a more serious offense); *State v. Longo*, 4 Ohio App.3d 136, 141, 446 N.E.2d 1145 (8th Dist.1982) (holding that the court abused its discretion in basing the sentence upon its own investigation of a crime that was neither charged nor proven); *State v. Jeffers*, 57 Ohio App.2d 107, 109, 385 N.E.2d 641 (1st Dist.1978) (holding that the court abused its discretion in increasing the sentence upon its belief that defendant had lied on the stand, because he was effectively being punished for an offense for which he was neither charged nor tried).

{¶31} Hamberg, through his motion, its supporting evidentiary material, and the record of the proceedings leading to his conviction, demonstrated substantive grounds for relief. He was indicted for aggravated murder, murder, felonious assault, and endangering children. But he maintained, and supported his motion with evidence tending to prove, that the victim had been injured in an accidental fall. And by his plea, he admitted only to causing the victim's death as a proximate result of creating a substantial risk to his health or safety by violating a duty of care.

{¶32} The trial court's remarks at the sentencing hearing and on the radio show made plain that the court imposed the maximum prison sentence based not on the sentencing purposes and factors, but on its disregard for the opinions of the defense's experts and the unfounded belief that the victim's death had resulted from an intentional "beat[ing]." Also evident was its predisposition against crediting any

12

mitigating factor, including Hamberg's military service and related disabilities, when determining a sentence for a defendant who has "pled to," and thus "admitted to," "kill[ing] a child."

{¶33} Thus, Hamberg, in his postconviction motion, demonstrated that the trial court, in determining his sentence, had been biased against him and had abused its discretion in failing to give due consideration to the sentencing purposes and factors. Because he sustained his burden of demonstrating substantive grounds for relief, Hamberg was entitled to a hearing on the motion. R.C. 2953.21(E).

### *We Reverse and Remand for a Hearing*

{¶34} We, therefore, hold that the common pleas court erred when it denied Hamberg's postconviction motion without a hearing. Accordingly, we sustain the assignments of error, reverse the court's judgment, and remand this cause for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

HENDON, P.J., concurs separately.
DEWINE, J., dissents.

HENDON, P.J., concurring separately.

{¶35} Because I agree that the appellant has sustained his burden of presenting the trial court with sufficient cause to require a hearing on his motion, I concur with the majority opinion above. It must be remembered that the appeal before this court is from the overruling of the "Motion for New Trial," in addition to a direct appeal. In reading the dissent below, that procedural aspect appears to be discounted.

{¶36} *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, established the authority for a court to recast a motion for relief from judgment as a

13

petition for postconviction relief as fully discussed herein. The meaning of this holding can hardly be misinterpreted or considered in any way other than the language of the decision itself.

{¶37} Yet the dissent chooses to disregard this precedent and strongly criticize the majority opinion for its application of *Schlee* to this matter. In addition, the series of hypothetical questions posed in paragraph 55 do nothing to further support the minority's view. They present only speculation.

{¶38} Criticism of the majority view is inherent in a well-written dissent, but the work of a reviewing court is best done with a vigorous and thorough discussion of the issues before it in a process that ideally includes a respect for the position taken by each member of the reviewing panel. Unfortunately, the dissent in this case, in its zeal to present its position, has ignored that ideal.

**DEWINE, J.**, dissenting.

{¶39} The majority today goes where no Ohio court has gone before. Confronted with a direct appeal of a criminal conviction, it chooses to pretend that it is dealing with a petition for postconviction relief. It then finds that the trial court erred by not holding an evidentiary hearing on this imaginary petition, and remands for such a hearing. No matter what one thinks of the result, one should be distressed by the way the court gets there.

{¶40} The majority tries to justify its result through a remarkable three-step process. In step one, it decides to split the appeal in half and separate Hamberg's "appeal" of his criminal conviction from his appeal of the denial of his motion for new trial. In step two, it dismisses the appeal of the conviction on the theory that the motion for new trial wasn't "appropriate" and, therefore, the appeal was not timely.

14

In step three, it finds that the court erred in not realizing that the motion for a new trial was really a motion for postconviction relief and treating it as such.

{¶41} A simple reading of Hamberg's brief demonstrates the inappropriateness of this procedure. In the brief, Mr. Hamberg asks for review of his criminal conviction under the applicable standards of appellate review. Mr. Hamberg raises two assignments of error: (1) that the sentence was clearly contrary to law because the trial judge failed to consider the appropriate sentencing factors, and (2) that he was denied due process because the sentencing judge was biased. The brief asks this court to vacate the sentence of the trial judge and to remand for resentencing. Nowhere in the brief does Mr. Hamberg assign as error that the denial of the motion for resentencing was error, or even argue that the denial of the motion was reversible error. Thus, if the majority is correct that the notice of appeal was not timely filed, the proper result is to dismiss the appeal in its entirety.

{¶42} The majority rationalizes its singular approach by noting that Hamberg raises matters outside of the record. Of course matters outside of the record may not be considered on appeal. *See State v. Madrigal*, 87 Ohio St.3d 378, 391, 721 N.E.2d 52 (2000). But the fact that an appellant has raised matters outside of the record never has been a reason for a court to treat a direct appeal as a postconviction motion. Rather, in such situations, courts routinely decide the appeal on the merits without consideration of the improper matters. *See, e.g., State v. Lambert*, 5th Dist. Richland No. 97-CA-34-2, 1999 Ohio App. LEXIS 1493 (Feb. 17, 1999); *State v. Hoke*, 4th Dist. Lawrence No. 10CA32, 2011-Ohio-1221; *State v. Storck*, 2d Dist. Clark No. 2014-CA-130, 2015-Ohio-2880. Sometimes, thoughtful courts have even accompanied such decisions with a suggestion that the party might want to consider filing a postconviction petition. *See State v. Cooperrider,* 4 Ohio

St.3d 226, 228-229, 448 N.E.2d 452 (1983); *United States v. Hui*, 64 Fed. Appx.264 (2d Cir.2003).

{¶43} The only authority cited by the majority in support of its transfiguration method is the Ohio Supreme Court's decision in *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431. *Schlee* dealt not with a direct appeal but with a pro se motion filed postconviction that was styled "Motion for Relief from Judgment." *Id.* at ¶ 6. The court found that such "irregular motions" may be cast "into whatever category necessary to identify and establish the criteria by which the motion should be judged." *Id.* at ¶12. We have applied *Schlee* in sorting out the proper standard to review "an irregular 'no-name motion,' that is, a motion that does not designate the statute or rule under which relief may be granted[.]" *State v. Black*, 1st Dist. Hamilton No. C-070546, 2008-Ohio-3790, ¶ 4.

{¶44} But of course, what we have before us is no "irregular motion." It is a direct appeal. It is far from the pro se motions to which we typically look to *Schlee* to help us identify the correct standard. *See, e.g., State v. Springer*, 1st Dist. Hamilton No. C-140530 (Aug. 5, 2015) ("Motion to Merge Multiple Counts"); *State v. Ringer*, 1st Dist. Hamilton No. C-120606, 2013-Ohio-2442 ("Motion for Merger Hearing Pursuant to R.C. 2941.25"); *State v. Evans*, 1st Dist. Hamilton No. C-140503, 2015-Ohio-3208 ("Motion for Sentencing and Issuance of a Final Appealable Order," "Motion for Establishment of a Date Certain for Oral Hearing Pursuant to * * * Crim.R. 43(A)," and "Motion for Resentencing Pursuant to * * * Crim.R. 32(A)(1)."). Rather, it is a direct appeal, prepared by highly competent counsel.

{¶45} Indeed, the majority's opinion is in direct conflict with the holding in *Schlee*. In *Schlee*, the court found that it was proper to recast a motion as a postconviction petition because it met four criteria: it was "(1) *filed subsequent to*

16

*[the defendant's] direct appeal*, (2) claimed a denial of constitutional rights, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence." (Emphasis added.) *Schlee* at ¶ 12, quoting *State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1999). Plainly, the first of these requirements is not met.

{¶46} *Schlee* also is explicit that "some motions may not be recast by the trial court." *Schlee* at ¶ 13. *See State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522. Thus, because postsentence motions to withdraw guilty or no-contest pleas under Crim.R. 32.1 invoke independent grounds for relief, and therefore "exist independently" of postconviction proceedings, they may not be recast as a motion for postconviction relief. *Schlee* at ¶ 13, citing *Bush* at 239. Obviously, direct appeals exist independently of postconviction motions. Similarly, there was nothing irregular about Hamberg's motion for a new trial. It was not filed after his direct appeal, but was timely filed in the trial court. That the motion may have lacked merit under the Ohio Supreme Court's decision in *State v. Frohner*, 150 Ohio St. 53, 80 N.E.2d 868 (1948), paragraph thirteen of the syllabus, was a reason for the trial court to deny the motion, which is exactly what it did. That it lacked merit was not a reason to recast it as a petition for postconviction relief.

{¶47} The majority compounds the unorthodoxy of its procedure by not even bothering to ask the state for a response before ordering an evidentiary hearing. Had a petition for postconviction relief actually been filed, the state would have had the right to file a response within ten days and to move for summary judgment within 20 days. R.C. 2953.21(D). In this case, the state was not given the opportunity to respond to the merits of the "petition." Never mind the adversary system, the court simply orders a hearing.

17

{¶48} To make matters worse, the majority does not even allow the state an opportunity to address the novel approach it concocts. The Ohio Supreme Court has insisted that "appellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.' " *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, citing *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988). Yet, in this case, the majority creates from thin air a completely new approach for post-trial motions and appeals that raise matters outside the records. It then foists this unprecedented approach on the parties without warning and without any chance to respond.

{¶49} Although the majority's decision seems to be primarily motivated by a raw desire to assist this defendant, it is not clear that the court's decision is particularly good for defendants in general. Ordinarily, a criminal defendant may pursue both a direct appeal and a petition for postconviction relief. The two avenues for relief offer different standards of review and allow different evidentiary opportunities. When the court recasts a motion filed by competent trial counsel, it denies the litigant his right to frame his case in the manner that he chooses. Thus, he loses the right to litigate to conclusion the legal argument that he sought to make in the trial court under the procedural posture and standard of review that he has chosen.

{¶50} This idea that parties, not courts, frame the issues is central to our jurisprudence. "In our adversary system, in both civil and criminal cases, in first instance and on appeal, we follow the principle of party presentation." *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). Under this principle, "we rely on the parties to frame the issues for decision and assign to the

18

courts the role of neutral arbiters of matters the parties present." *Id.* Our role is not to "sally forth each day looking for wrongs to right. We wait for cases to come to us and when they do we normally only decide the questions presented by the parties." *Id.* at 244, quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir.1987) (Arnold, J., concurring in denial of reh'g en banc).

{¶51} "Counsel," we are reminded, "almost always know a great deal more about their cases than we do." *Samuels* at 1301. Courts "have enough work to do without assuming an activist role and becoming advocates." *Id.* at 1299 (Lay, J., concurring). Thus, "[p]articularly when a party is represented by legal counsel below and on appeal, we give the appellant the opportunity to direct the way they wish to address their appeal." *Summit Constr. Co. v. L.L.F.J.A.O.*, 9th Dist. Summit No. 25621, 2012-Ohio-568, ¶ 11.

{¶52} Departures from this organizing principle of party presentation have typically only been justified "to protect a pro se litigant's rights." *Greenlaw* at 244. *See Casto v. United States*, 540 U.S. 375, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring) (critiquing the practice as "a paternalistic judicial exception to the principle of party self-determination, born of the belief that the 'parties know best' assumption does not hold true for pro se prisoner litigants."). Mr. Hamberg, of course, is not a pro se litigant, but represented by highly competent counsel. But even in the case of pro se litigants, where the federal courts have allowed certain postconviction motions to be recast, great care has been taken to make sure that the court does not deprive the pro se defendant of his right to party presentation without some say in the matter.

{¶53} Thus, the United States Supreme Court has mandated that before a pro se motion of a prisoner may be recast as a request for habeas relief, the court

must first notify the prisoner of the intent to recharacterize, warn him that recharacterization may cut off the opportunity to file a second petition, and provide the prisoner an opportunity to withdraw or amend the motion. *Castro* at 377.

{¶54} This court's dramatic expansion of the ability to recast post-trial motions raises the same sorts of problems that worried the Supreme Court in *Castro*. Under R.C. 2953.23, a court may not entertain a second or successive petition except in narrowly defined situations. By recasting a post-trial motion as a R.C. 2953.23 motion, courts may cut off litigants from raising meritorious issues that didn't make it into the "postconviction petition" that the court drafted for them. Further, the failure to raise these issues in the initial state court petition may also cut off the litigant's ability to seek federal habeas relief. *See Broom v. Mitchell*, 441 F.3d 392, 400-401 and fn. 8 (6th Cir.2006). Thus, while this court is bound and determined to help this defendant, the precedent it sets is not particularly good for defendants as a whole.

{¶55} One can only imagine the problems and questions that will arise from the majority's opinion. For example, R.C. 2953.21(A)(4) requires a party to state all applicable grounds for postconviction relief and provides that those not stated are waived. What happens where, as here, a party does not file a petition but the court decides to pretend like it has? Are matters not raised in the imaginary petition waived? Is there a duty to immediately amend if the court orders transfiguration? What does one amend since no petition was ever actually filed? What about the limits on successive petitions referenced above? What about the Due Process Clause? Is there a due-process problem in denying a litigant the opportunity to proceed with a properly filed post-trial motion? What about the time limits for filing a postconviction motion? Do the time limits apply to imaginary petitions as well as

real ones? How are those time limits calculated? If the court is going to start conjuring rules, it is going to need to make up a lot more to go with them.

{¶56} This is not to mention the havoc that will be wreaked in our trial courts. Contemplate for a moment the head scratching and confusion to come. A defendant timely files a post-trial motion. The court finds that it lacks merit—but wait, before it denies the motion, it needs to look at the postconviction statute. Could this be reframed as a postconviction petition? If it could, then the trial court had better reframe it as one or risk being reversed by this court. Never mind how the defendant wants to proceed. Never mind the adversary system.

{¶57} In the end, the majority's legal gymnastics have obtained for Hamberg a hearing in the trial court. But the price is a high one for this court. We are left with a procedural mess, and a doctrinal albatross. I dissent.


Please note:

The court has recorded its own entry this date.