Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 23, 2020

**2020 CO 82**

**No. 19SC460, *Galvan v. People*—Quantum of Proof Required for Jury Instruction on Exception to Affirmative Defense of Self-Defense—Provocation Exception to Affirmative Defense of Self-Defense—"Some Evidence"— "Another Person" in Provocation Jury Instruction—Hypothetical Questions Calling for Advisory Opinions—Party Presentation Principle.**

The supreme court holds that when a trial court instructs the jury on the affirmative defense of self-defense, it should instruct the jury on the provocation exception or any other exception to that defense if there is "some evidence" to support the exception.

A division of the court of appeals correctly determined that there was some evidence in support of the provocation instruction the trial court gave the jury in this case. Additionally, the division correctly found that the trial court did not plainly err in failing to specify that all the references in the provocation instruction to "another person" meant the same person. The provocation instruction, in addition to prudently tracking the governing statute and the Colorado Model Criminal Jury Instructions, made clear to the jury that for the defendant to forfeit

the affirmative defense of self-defense, he had to have provoked the same person as to whom he was asserting self-defense.

The division properly abstained from deciding whether the provocation exception may be triggered by mere words because in this case both words and conduct supported the exception. For the same reason, the supreme court refrains from addressing this issue.

However, under the party presentation principle, the division improperly raised and resolved whether the First Amendment prohibited the defendant's words from being considered, in conjunction with his physical acts, as evidence in support of the provocation exception. In this court, the defendant mounts a slightly different constitutional argument—one he raises for the first time. He argues that mere words cannot impair a defendant's right to the affirmative defense of self-defense without rendering the provocation statutory provision unconstitutional and potentially subjecting a defendant to criminal liability for speech that's protected by the First Amendment. Because this is not a case involving mere words, though, the "mere words" constitutional argument the defendant raises now is a hypothetical one that calls for an advisory opinion. Therefore, the court declines to address it.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203
_____

**2020 CO 82**
_____

**Supreme Court Case No. 19SC460**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA1988
_____

**Petitioner:**

Jose Luis Galvan, Sr.,

v.

**Respondent:**

The People of the State of Colorado.
_____

**Judgment Affirmed and Opinion Vacated**
*en banc*
November 23, 2020
_____

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Meredith E. O'Harris, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Brian M. Lanni, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents, and **JUSTICE GABRIEL** and **JUSTICE HART** join in the dissent.

¶1 Though our court doesn't have a time machine built out of a DeLorean,[1] today we circle back to 2018 to answer a question we left open in *Castillo v. People*, 2018 CO 62, ¶¶ 35–37, 421 P.3d 1141, 1147: When a trial court instructs the jury on the affirmative defense of self-defense, what quantum of proof is required to instruct the jury about an exception to that defense? The People urge us to adopt "some evidence" as the controlling standard. The defendant, Jose L. Galvan, Sr., advocates for a heightened standard—substantial and sufficient evidence for a reasonable juror to conclude that there are facts establishing the exception beyond a reasonable doubt. We hold that when a trial court instructs the jury on the affirmative defense of self-defense, it should instruct the jury on an exception to that defense if there is *some evidence* to support the exception. In determining whether the trial court properly instructed the jury on the provocation exception here, a division of the court of appeals correctly found that there was some evidence to support the exception.

¶2 The division also ruled, again correctly, that the trial court did not plainly err in failing to specify that all the references in the provocation instruction to

---

[1] The DeLorean DMC-12 sports car gained mainstream fame after being featured as a homemade time machine in the "Back to the Future" trilogy. *See Back to the Future* (Universal Pictures 1985); *Back to the Future II* (Universal Pictures 1989); *Back to the Future III* (Universal Pictures 1990).

"another person" meant the same person. Like the division, we hold that the trial court's provocation instruction, in addition to prudently tracking the governing statute and the Colorado Model Criminal Jury Instructions, made clear to the jury that for Galvan to forfeit the affirmative defense of self-defense, he had to have provoked the same person as to whom he was asserting self-defense.

¶3    Finally, the division determined that it didn't need to decide whether the provocation exception may be triggered by mere words because in this case both words *and* conduct supported the exception. Though the division was spot-on here too, it then decided, sua sponte and without briefing, whether the First Amendment prohibited Galvan's words from being considered, in conjunction with his physical acts, as evidence in support of the provocation exception. The division reasoned that the State regulated Galvan's speech when the trial court instructed the jury on the provocation exception, and that, therefore, his First Amendment rights were implicated. Reviewing the issue through a constitutional prism, the division opined that most of Galvan's speech was properly submitted as evidence in support of the provocation exception because such speech constituted fighting words that were not shielded by the bulwark of the First Amendment.

¶4    In this court, Galvan maintains again that his *words alone* could not justify giving the provocation instruction. According to Galvan, the exception requires a

physical act—at minimum "a hostile act or gesture." Additionally, Galvan contends for the first time that allowing "mere words" to vitiate the right to the affirmative defense of self-defense would render the provocation exception unconstitutionally vague and overbroad and expose a defendant to criminal liability for speech that is afforded sanctuary in the First Amendment. The People counter that, since the exception requires a course of calculated criminal *conduct*, Galvan cannot scurry behind the First Amendment for refuge. Because the evidence in support of the provocation exception in this case was not limited to mere words, we conclude that Galvan advances hypothetical arguments that call for advisory opinions. Therefore, we decline to consider them.

¶5 We affirm the division's judgment. But because the division erred in raising and resolving the First Amendment issue, and because it would be improper for us to address the merits of the similar First Amendment claim brought by Galvan now, we are compelled to vacate the division's opinion.

## I. Facts and Procedural History

¶6 A confluence of circumstances—a birthday celebration, a party bus, nightclubs, and alcohol—culminated in the charges filed against Galvan. It all happened on a weekend night in March 2015. A woman invited some of her friends to join her on a party bus from Greeley to downtown Denver to celebrate her birthday at various nightclubs. Among those on the bus were two pairs of

3

siblings who had never met before: sisters C.M. and S.M. (the named victims); and Galvan and his sister, E.C. With the exception of E.C., all the guests overindulged and became highly intoxicated by the end of the evening. When Denver nightclubs closed around 2:00 a.m., the group boarded the party bus and headed back to Greeley. Shortly after exiting the bus in Greeley, Galvan punched and seriously injured C.M. But what led to the assault remains hotly disputed, and the witnesses painted two very different pictures at trial.

## A. Version of Events Provided by C.M. and S.M. at Trial

¶7 On the way back to Greeley, S.M. and Galvan began arguing because he was throwing chips at a passenger who was passed out. S.M. told him to "knock [it] the fuck off," and he responded, "What are you going to do about it, bitch?" As the two went "back and forth," C.M. joined in the altercation. Galvan stood up and again asked, "What the fuck are you going to do about it, bitch?" He then took a step toward the sisters, at which point they, too, stood up. When the bus driver saw the confrontation, he intervened and warned the group that if they didn't stop arguing, they would have to walk home. Things calmed down, and the rest of the bus ride was uneventful.

¶8 The bus arrived back in Greeley around 3:00 a.m. As everyone disembarked, Galvan yelled at the sisters, telling them that they were "going to get it" and that they should "watch [their] back[s]." He also said that they were

4

"nothing but a bunch of fat, fucking bitches." This insult drew an angry rebuke from C.M.: "Really? . . . Talk that shit to a bunch of females?" After exiting the bus, C.M. and her sister started walking to their aunt's house. They opted not to wait for their ride because they didn't think Galvan was going to leave.

¶9 Shortly thereafter, as Galvan and his sister drove slowly next to them in his truck, he yelled out the window: "If any of you want this, well, come and get it." He then pulled up in front of them, got out of his truck, and started running toward them with his fist cocked, as if ready to punch someone. C.M. walked toward him, with S.M. following closely behind her. Galvan and C.M. met in the street, where he punched her in the face, breaking her nose and causing her to fall and break her ankle. S.M. became enraged and began swinging at Galvan. The two physically fought until E.C. intervened. Galvan and E.C. fled the scene before the police responded.

## B. Version of Events Provided by E.C. at Trial

¶10 Throughout the evening, C.M. made sexual advances toward E.C., causing E.C. to feel harassed and uncomfortable. On the way to Denver, C.M. "rubbed on [E.C.'s] boob," but claimed it was an accident. While at one of the nightclubs in Denver, C.M. asked E.C. to dance. When she declined the invitation, C.M. told her she needed a drink to loosen up and relax. But E.C. turned down the offer. Later, though, when C.M. asked her to dance again, she agreed. While they were

dancing, E.C. became uncomfortable because C.M. touched her. E.C. and Galvan attempted to get a ride back to Greeley from friends, but none of the people they contacted by phone answered. As a result, they took the bus back to Greeley.

¶11 C.M. sat next to E.C. on the way back and made additional sexual advances. At one point, C.M. actually touched E.C.'s breast, and Galvan slapped C.M.'s hand away. When Galvan pushed C.M. to the side, the situation escalated. C.M. and S.M. started scolding Galvan because they felt that E.C. should make her own decisions. Galvan, in turn, stood up and yelled something offensive to them, and they responded in kind. Some pushing and shoving followed between Galvan and the sisters, though the scuffle quickly dissipated.

¶12 Sometime later, E.C. saw someone throwing pieces of food at a sleeping passenger, but E.C. denied that her brother was the culprit. She admitted, however, that when a piece of food landed on Galvan, he flicked it off and it inadvertently ended up on the sleeping passenger. This reignited the ruckus. S.M. grabbed Galvan by the shirt and told him she was not scared of him and that they could fight if he wanted to fight. Likewise, C.M. told Galvan they could fight. Because the bus driver intervened, the fracas stopped.

¶13 Upon arriving in Greeley, Galvan and E.C. went straight to his truck to leave. After driving about a block down the street, E.C. heard a loud bang from the rear of the truck and assumed that C.M. or S.M. had thrown a liquor bottle at

6

them.  Galvan pulled over so E.C. could check the truck for damage.  While outside the truck, the sisters came up behind her.  S.M. shoved her and, as C.M. swung to punch her, Galvan defended her by hitting C.M.  After C.M. was knocked to the ground, S.M. attacked Galvan.  E.C. and her brother then left the scene.

## C.  The Charges, Verdicts, Sentence, and Appeals

¶14     Galvan was charged with four counts, the first of which named C.M. as the victim and the last three of which named S.M. as the victim: (1) second degree assault, a class 4 felony; (2) felony menacing, a class 5 felony; (3) attempted second degree assault, a class 5 felony; and (4) third degree assault, a class 1 misdemeanor. At trial, Galvan raised the affirmative defense of self-defense with respect to all the charges.  The jury convicted Galvan of second degree assault against C.M. but acquitted him of the remaining charges.  The court subsequently sentenced him to ten years in prison with three years of mandatory parole.

¶15     Galvan appealed, but a division of the court of appeals affirmed his judgment of conviction.  He then asked us to review his case, and we granted his petition.

## II.  Analysis

¶16     We agreed to consider all three issues in Galvan's petition:

1. Whether more than "some evidence" of provocation is required to authorize a jury instruction on the provocation exception to self-defense.

2. Whether a defendant's words alone can justify a jury instruction on the provocation exception to self-defense, and if so, whether the defendant's words must be considered in a manner consistent with the defendant's right to free speech.

3. Whether the self-defense instruction given—which referred to a single victim—adequately informed the jury of the law of self-defense when there were two alleged victims and self-defense applied as an affirmative defense to both.

We discuss each issue in turn, though we reverse the order of the last two issues.

## A. A Trial Court Should Instruct the Jury on an Exception to the Affirmative Defense of Self-Defense if There Is Some Evidence to Support the Exception

¶17 As usual, the point of departure for our analytical journey is the law. Therefore, we begin by visiting the tenets underlying the affirmative defense of self-defense and our jurisprudence on instructing the jury on that defense.

¶18 In Colorado, the defense of self-defense is codified in section 18-1-704, C.R.S. (2020), "Use of physical force in defense of a person—definitions."[2] Under this statute, a defendant is legally justified in using against another person a degree of nondeadly physical force that he reasonably believes to be necessary to defend himself or a third person from what he reasonably believes to be the use or

_____

[2] The statute is aptly titled "defense of a person," instead of "self-defense," because it encompasses both self-defense and defense of a third person. For the sake of convenience, and based on common parlance, we refer to the defense in this opinion as "self-defense."

8

imminent use of unlawful physical force by the other person.[3] § 18-1-704(1). But the same statute contains four exceptions. § 18-1-704(3). If any of the exceptions applies, the defendant "is not justified in using physical force." *Id.*

¶19 One exception, the provocation exception, is of particular relevance here: A defendant is not legally justified in using physical force against another person if the defendant, with the intent to cause bodily injury or death to the other person, provokes the victim to use unlawful physical force. § 18-1-704(3)(a). Thus, a defendant forfeits self-defense as an affirmative defense to legally justify his use of physical force upon another person if: (1) the other person uses unlawful physical force against him; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him in order to provide a pretext to injure or kill that person. *See People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999).[4]

---

[3] *Deadly* physical force, which may be justifiably used in defense of a person only as prescribed in section 18-1-704(2), is not at issue in this case.

[4] The division in *Silva* surmised that, under the provocation exception, "the victim [must] make[] an *initial* attack on the defendant." 987 P.2d at 914 (emphasis added). But section 18-1-704(3)(a) does not limit the exception to a situation in which the victim attacks first. Nor have we ever engrafted such a restriction onto the exception.

¶20     Self-defense can be an affirmative defense or an element-negating traverse. *People v. Pickering*, 276 P.3d 553, 555–56 (Colo. 2011); *see also Roberts v. People*, 2017 CO 76, ¶ 19, 399 P.3d 702, 705 ("We have generally recognized two types of defenses to criminal charges: (1) affirmative defenses and (2) traverses.").[5] Unlike a traverse, which simply challenges the existence of an element of the charged offense, an affirmative defense is a complete defense. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).  In this case, we deal with self-defense only as an affirmative defense.  We cabin our discussion accordingly.

¶21     When a defendant relies on an affirmative defense, he essentially admits the commission of the elements of the charged offense but seeks to justify, excuse, or mitigate his conduct.  *Roberts*, ¶ 20, 399 P.3d at 705.  If the evidence presented properly raises the issue of an affirmative defense, the affirmative defense is treated as an additional element of the charged offense.  *Id.* at ¶ 22, 399 P.3d at 705. This is so because the People have the burden of proving "the guilt of the defendant . . . beyond a reasonable doubt" as to "the issue involved in an

---

[5] It is impossible for a person to act, on the one hand, with criminal negligence, recklessness, or extreme indifference, and on the other, in self-defense, because self-defense requires one to act justifiably, which is "totally inconsistent" with acting with criminal negligence, recklessness, or extreme indifference. *Pickering*, 276 P.3d at 556.  Therefore, with respect to certain crimes, self-defense is an element-negating traverse, not an affirmative defense. *Id.*

10

affirmative defense." § 18-1-407(2), C.R.S. (2020); *see also People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo. 1989) (quoting an earlier version of section 18-1-407). Hence, when instructing on an affirmative defense, the trial court must inform the jury that, in addition to proving each statutory element of the charged offense beyond a reasonable doubt, the People bear another burden — the burden of disproving the affirmative defense beyond a reasonable doubt (i.e., of proving beyond a reasonable doubt that the defendant's conduct was not legally justified by the affirmative defense). *Roberts*, ¶ 22, 399 P.3d at 705; *Huckleberry*, 768 P.2d at 1238.

¶22 One way for the People to satisfy their burden of proof vis-à-vis the affirmative defense of self-defense is to disprove beyond a reasonable doubt at least one of the two conditions of the defense: (1) that the defendant used physical force in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by another person; or (2) that the defendant used a degree of force which he reasonably believed to be necessary for that purpose. *See* COLJI-Crim. H:11 (2019). Another way is for the People "to prove beyond a reasonable doubt that an exception to self-defense applies." *Castillo*, ¶ 40, 421 P.3d at 1148. Consequently, as pertinent here, the People may overcome the affirmative defense of self-defense by establishing beyond a reasonable doubt that the defendant, with the intent to cause

11

bodily injury or death to another person, provoked the use of unlawful physical force by that other person. *See* COLJI-Crim. H:11 (2019).

¶23     But what quantum of evidence entitles the People to a jury instruction on an exception to the affirmative defense of self-defense? Is it the same quantum of evidence that generally entitles a defendant to a jury instruction on that affirmative defense in the first place? Or does a heightened standard apply?[6]

¶24     Section 18-1-407(1) addresses the quantum of proof required to raise an affirmative defense. It provides that, "unless the state's evidence raises the issue involving" an affirmative defense, "the defendant, to raise the issue, shall present *some credible evidence* on that issue." § 18-1-407(1) (emphasis added). As we recently recognized in *Castillo*, "[w]e have articulated this standard in slightly different ways over time." *Castillo*, ¶ 35 n.3, 421 P.3d at 1147 n.3. We've referred to the standard verbatim, "some credible evidence," *O'Shaughnessy v. People*, 2012 CO 9, ¶ 11–12, 269 P.3d 1233, 1236 (quoting § 18-1-407(1)), but we've also referred to variations of the standard, such as: "any credible evidence, including even highly improbable" evidence, *People v. Speer*, 255 P.3d 1115, 1119 (Colo. 2011);

---

[6] What quantum of proof is necessary before a trial court should instruct the jury on an exception to the affirmative defense of self-defense is a question of law subject to de novo review. *Thompson v. People*, 2020 CO 72, ¶ 23, 471 P.3d 1045, 1051.

"a scintilla of evidence," *People v. Saavedra-Rodriguez*, 971 P.2d 223, 228 (Colo. 1998)); and "any evidence," *Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991). And divisions of the court of appeals have equated "some credible evidence" with a "small quantum of evidence," *People v. Newell*, 2017 COA 27, ¶ 21, 395 P.3d 1203, 1207, and "some evidence," *id.* at ¶ 25, 395 P.3d at 1207; *People v. Bachofer*, 192 P.3d 454, 463 (Colo. App. 2008). In short, at least in this context, our appellate courts have understood "some credible evidence" to be interchangeable with "some evidence," "any credible [even if highly improbable] evidence," "a scintilla of evidence," a "small quantum of evidence," and "any evidence."[7]

¶25    We think it wise to adopt the same standard that governs the propriety of affirmative defense instructions to the inquiry here regarding the suitability of instructions on exceptions to the affirmative defense of self-defense. We therefore hold that when the trial court instructs the jury on the affirmative defense of self-defense, it should instruct the jury on the provocation exception or any other exception to that defense if the exception is supported by some evidence.

---

[7] Neither party asks us to draw a distinction between "some credible evidence," on the one hand, and "any credible [even if highly improbable] evidence," "a scintilla of evidence," "any evidence," a "small quantum of evidence," and "some evidence," on the other. And we see no reason to do so today. Thus, we continue to view these terms as synonymous in the sphere of affirmative defenses.

¶26 Admittedly, we noted in *Castillo* that "there are strong arguments that the burden of proof to raise an exception to an affirmative defense should be higher than the burden to raise [the] affirmative defense." *Castillo*, ¶ 37 n.4, 421 P.3d at 1147 n.4. But we ultimately shelved the question because we found that "it was error" to instruct the jury on the exception at issue there "under any standard." *Id.* at ¶ 37, 421 P.3d at 1147.

¶27 After reminding us about our observation in *Castillo*, Galvan argues that requiring only some evidence for exceptions to the affirmative defense of self-defense fails to comport with due process because it will routinely mislead juries and invite them to improperly reject that affirmative defense. Galvan worries that in a case in which the People present unreasonable, improbable, or unbelievable evidence that nevertheless satisfies the "some evidence" standard, the jury will be asked to consider the provocation exception to self-defense even though a reasonable juror would not find beyond a reasonable doubt that the exception applies. A higher quantum of proof is necessary, asserts Galvan, because the People's ultimate burden of proof with respect to the exception is beyond a reasonable doubt.

¶28 But it's the People's ultimate burden of proof with respect to the exception that sounds the death knell of Galvan's contention. In the example cited by Galvan involving *some unreasonable, improbable, or incredible evidence* in support of the

14

provocation exception, the jury will *not* reject the affirmative defense of self-defense based on the exception because it will be instructed that the People have the burden of proving *beyond a reasonable doubt* that the exception applies. *See* COLJI-Crim. H:11 (2019) ("The prosecution has the burden to prove, beyond a reasonable doubt," that the defendant, "with intent to cause bodily injury or death to another person, provoke[d] the use of unlawful physical force by that other person.").

¶29 "We presume that a jury follows the trial court's instructions and would acquit . . . if the prosecution did not prove all of the elements of the . . . charge beyond a reasonable doubt." *People v. Trujillo*, 83 P.3d 642, 648 (Colo. 2004). In a case in which the jury is instructed on the affirmative defense of self-defense, one of the elements of the charge would require the People to disprove, including possibly via the provocation exception, the affirmative defense beyond a reasonable doubt. And "jurors should be trusted to follow the court's instructions to find the defendant guilty only if the prosecution has proved each of the elements of the charged crime beyond a reasonable doubt." *People v. Dunaway*, 88 P.3d 619, 629 (Colo. 2004).

¶30 In our view, Galvan's proposed approach—requiring substantial and sufficient evidence to permit a reasonable juror to conclude beyond a reasonable doubt that the exception applies—gives rise to more serious and realistic

15

concerns.[8]  In a case in which there is some evidence to support the provocation exception, but not substantial and sufficient evidence to establish the exception beyond a reasonable doubt, the jury would be left to wonder what to do with that evidence.  We would run the risk of having the jury either speculate about the significance of the provocation evidence introduced or, worse, rely on that evidence to incorrectly reject the affirmative defense of self-defense.  At a minimum, there would be a danger that the jury would return an improper verdict based on an incomplete or inaccurate understanding of the relevant law.

¶31    For example, the jury in such a case might incorrectly conclude that evidence that the defendant provoked the victim suffices to forfeit a self-defense claim even though the defendant didn't act with the intent required by section 18-1-704(3)(a).  Without an instruction on the provocation exception, the jury would have no way of knowing that, absent evidence of the requisite intent, the provocation exception cannot defeat the affirmative defense of self-defense.  Perversely, then, the decision to deliberately keep jurors in the dark about the law

---

[8] Galvan's proffered quantum of proof appears to be modeled after the standard governing motions for judgment of acquittal.  *See People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973) (whether the evidence, viewed as a whole and in the light most favorable to the prosecution, "is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt").

16

on the provocation exception for fear that they will disregard that law and prejudice the defendant may well end up prejudicing the defendant. And therein lies the problem with hiding relevant law from jurors. How can we possibly trust our jury system—a cornerstone of our democracy—if we don't trust our jurors?

¶32 Of course, trial courts must guard against giving superfluous instructions that limit the affirmative defense of self-defense, as such instructions may be prejudicial. *Castillo*, ¶ 61, 421 P.3d at 1151. To do so, trial courts must ensure that there is some evidence in support of an exception to the affirmative defense of self-defense before instructing the jury on that exception. If the "some evidence" standard is met, however, the court should instruct the jury on the exception in question. *See Townsend v. People*, 252 P.3d 1108, 1111 (Colo. 2011) ("A trial court must correctly instruct the jury on applicable law . . . ."); *People v. Weinreich*, 119 P.3d 1073, 1076 (Colo. 2005) ("A trial court has a duty to instruct the jury correctly on the law applicable to the case.").

¶33 Here, viewing the evidence in the light most favorable to giving the provocation instruction, *Silva*, 987 P.2d at 914, we agree with the division that the trial court correctly provided the instruction because there was some evidence in

support of the provocation exception.[9]  There was evidence that C.M. used unlawful physical force, that Galvan provoked C.M. to use that unlawful physical force, and that Galvan's provocation was undertaken as a ruse to manufacture an excuse to physically harm her.  Recall that C.M. and S.M. both testified at length about Galvan's acts and words throughout the night.  As well, E.C. testified that C.M. used unlawful physical force after returning to Greeley.  According to E.C., Galvan defended her by hitting C.M. just as C.M. was using unlawful physical force against her.[10]  Lastly, there was evidence which, viewed in the light most favorable to giving the instruction, permitted the jury to reasonably infer that

---

[9] "Whether sufficient evidence exists to support the requested instruction is a question of law that we review de novo."  *Castillo*, ¶ 32, 421 P.3d at 1146.

[10] In accordance with Colorado law, the court instructed the jury that Galvan was legally authorized to use physical force upon C.M. if he used that physical force to defend himself *or E.C.*  Further, consistent with our jurisprudence on the provocation exception, the court told the jury that Galvan forfeited his affirmative defense if, with intent to cause bodily injury or death to C.M., he provoked the use of unlawful physical force by C.M.  The jury was not instructed—nor should it have been—that the provocation exception applied only if C.M. made an initial attack *on Galvan*.  There is no requirement in a provocation situation that the victim's unlawful physical force be directed at the defendant.  Indeed, in a case in which the defendant asserts the affirmative defense because he was purportedly defending a third person, it wouldn't make sense to have such a requirement. Here, it sufficed that Galvan provoked C.M. into using unlawful physical force *against E.C.*

Galvan intended his provocation to egg on C.M. to use unlawful physical force so that he would then have justification to injure her.

¶34    But was the provocation jury instruction provided by the trial court deficient because it failed to identify the term "another person"? Galvan says so. We address that question next.

## B.  The Self-Defense Instruction Did Not Convey to the Jury That Galvan's Provocation of One Person Foreclosed His Claim of Self-Defense as to a Different Person

¶35    Galvan maintains that the self-defense instruction given by the trial court to the jury was erroneous because it failed to clarify that his alleged provocation of one person's use of unlawful physical force forfeited his self-defense claim only with respect to that person. Without this clarification, avers Galvan, the jury could have relied on the provocation exception to find that he did not act in self-defense with respect to S.M., and then applied that finding to reject his self-defense claim with respect to C.M.[11]

---

[11] We review instructions de novo to determine whether they accurately informed the jury of the governing law. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). Where, as here, a claim is unpreserved as a result of the defendant's "failure to make the timely assertion of a right," the claim is deemed forfeited and is subject to plain error review. *People v. Rediger*, 2018 CO 32, ¶ 40, 416 P.3d 893, 902 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

¶36 The trial court instructed the jury that Galvan did not act in self-defense if, "with intent to cause bodily injury or death to *another person*, [he] provoke[d] the use of unlawful physical force by *that other person*." (Emphases added.) We perceive no error, much less plain error, in this instruction.

¶37 First, the instruction tracked the language of section 18-1-704(3)(a). "A jury instruction that tracks the exact language of a statute is unlikely to mislead the jury on the state of the law." *People in Interest of J.G.*, 2016 CO 39, ¶ 42, 370 P.3d 1151, 1163.

¶38 Second, the instruction mirrored the language of COLJI-Crim. H:11 of the Colorado Model Criminal Jury Instructions. The model instructions, while not "a safe harbor that insulates instructional error from reversal," *Garcia v. People*, 2019 CO 64, ¶ 22, 445 P.3d 1065, 1069, have been approved in principle by our court and serve as beacon lights to guide trial courts, *see* COLJI-Crim. Order.

¶39 Third, the instruction clearly conveyed to the jury that Galvan could only forfeit his affirmative defense of self-defense if he provoked *the person as to whom he was asserting self-defense*. Therefore, with respect to the charge involving C.M., the jury was accurately informed that Galvan's conduct was not legally authorized by the affirmative defense of self-defense if the People proved beyond a reasonable doubt that he provoked C.M. to use unlawful physical force, and that he did so with the intent to injure or kill her.

¶40    If instructions "adequately inform the jury of the law, there is no reversible error." *People v. Vanrees*, 125 P.3d 403, 410 (Colo. 2005).  Further, we presume that "the jury understood and heeded the trial court's instructions." *People v. Phillips*, 91 P.3d 476, 484 (Colo. App. 2004).  Because the challenged instruction adequately informed the jury about the provocation exception, and because we presume that the jury understood and heeded that instruction, we reject Galvan's plain error contention.

¶41    Having disposed of the first and third issues in Galvan's petition, we move on to the last issue.  For the reasons set forth below, we do not address the merits of that issue.

## C.  We Do Not Reach Whether a Defendant's Words Alone Can Justify an Instruction on the Provocation Exception, and if So, Whether Such Words Must Be Considered in a Manner Consistent With the First Amendment

¶42    For two reasons, Galvan complains that his words alone could not justify the provocation instruction.  First, he argues that the plain language of section 18-1-704(3)(a) requires a physical act—no less than "a hostile act or gesture."  Mere words can never suffice, urges Galvan.  Second, he avers that mere words cannot impair a defendant's right to the affirmative defense of self-defense without rendering section 18-1-704(3)(a) unconstitutional and potentially subjecting a defendant to criminal liability for speech that's sheltered by the First Amendment.

21

¶43 Because this is not a case involving mere words, the division correctly abstained from deciding whether words alone may justify a provocation instruction. "A court has no jurisdiction . . . to decide a case on a speculative, hypothetical, or contingent set of facts." *Robertson v. Westminster Mall Co.*, 43 P.3d 622, 628 (Colo. App. 2001). We follow suit and, accordingly, refrain from resolving this question.

¶44 But the division, sua sponte and without briefing, nevertheless addressed whether interpreting section 18-1-704(3)(a) to permit the jury to consider Galvan's words, in conjunction with his physical acts, as evidence in support of the provocation exception rendered the statutory provision unconstitutionally vague and overbroad and possibly violative of the First Amendment. This was error.

¶45 Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). This principle assumes that parties—at least those like Galvan who enjoy representation—"know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). Hence, courts must function as "passive instruments of government" and should not "sally forth each day looking for

22

wrongs to right." *Id.* (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). It follows that courts are well-advised to "wait for cases to come" to them and to "decide only questions presented by the parties." *Id.* (quoting *Samuels*, 808 F.2d at 1301 (Arnold, J., concurring in denial of reh'g en banc)).

¶46 While this is a "supple" rule, not an intransigent one, we are aware of no circumstances here that permitted "a modest initiating role" for the division. *Id.* This is especially the case considering that the division neither called for supplemental briefing nor appointed *amicus curiae*. *See id.* at 1579 n.4.

¶47 Regardless, we cannot review the constitutional question spontaneously reached by the division because neither party raises it here. Before us, Galvan mounts a slightly different constitutional challenge—one he raises for the first time in this litigation. He contends that interpreting section 18-1-704(3)(a) to allow the provocation exception to be triggered by *mere words* renders the statutory provision unconstitutionally vague and overbroad and potentially infringes on his

First Amendment rights.[12]  But, as we've observed, this is not a case in which mere words triggered the provocation exception.

¶48     The evidence in support of the provocation exception in this case clearly included both words and physical acts.  For example, while on the bus, in response to S.M. reprimanding him for throwing pieces of food at a sleeping passenger, Galvan stood up, faced S.M., and said, "What the fuck are you going to do about it, bitch?"  He then took a step toward S.M. and C.M., at which point they, too, stood up.  This physical confrontation prompted the bus driver to intervene. Likewise, after arriving back in Greeley, Galvan drove slowly next to the sisters and yelled out the window: "If any of you want this, well, come and get it."  He then pulled up in front of them, got out of his truck, and started running toward them with his fist cocked, as if ready to punch one or both of them.  Galvan and C.M. then met in the street.

¶49     Given Galvan's physical acts, the "mere words" constitutional argument he raises now is a hypothetical one that calls for an advisory opinion.[13]  Our court "is

---

[12] The division, by contrast, explored whether relying on Galvan's words, *in conjunction with his physical acts*, as evidence in support of the provocation exception violated the First Amendment.

[13] The division, too, found that this case involved both words and physical acts, and neither party expressly disagrees with that finding in front of us.

not empowered to give advisory opinions based on hypothetical fact situations."

*Tippett v. Johnson*, 742 P.2d 314, 315 (Colo. 1987). Therefore, it would be improper for us to address the merits of Galvan's constitutional challenge. Such a theoretical issue must be reserved for a day when it is properly teed up. Accordingly, we decline his invitation to resolve it at this time.

## III. Conclusion

¶50 We affirm the division's judgment. However, because the division erred in raising and resolving the First Amendment issue, and because it would be improper for us to address the merits of the similar First Amendment claim brought by Galvan now, we are compelled to vacate the division's opinion.

**JUSTICE MÁRQUEZ** dissents, and **JUSTICE GABRIEL** and **JUSTICE HART** join in the dissent.

25

JUSTICE MÁRQUEZ, dissenting.

¶51 In my view, we need not resolve today the question we left open in *Castillo v. People*, 2018 CO 62, ¶ 37, 421 P.3d 1141, 1147, because regardless of the quantum of proof required to justify an instruction on a statutory exception to self-defense, it was reversible error to give the instruction in this case.

¶52 The provocation exception defeats a defendant's claim of self-defense where the defendant goads his victim into attacking him first to give the defendant an excuse to harm or kill the victim. But here, the prosecution never argued that Galvan provoked his victims to attack him first, and it never requested an instruction on provocation. In fact, when the trial court injected the issue sua sponte over defense counsel's objection, the prosecution *agreed* with the defense that there was no evidence of provocation with respect to C.M.—the victim of the second degree assault conviction under review here. Further, because the instruction given did not distinguish between the victims, and because it did not make clear that it applies only where the victim made an initial attack on the defendant, the error here was not harmless; the jury likely assumed that the (unfounded) instruction was given for a reason and relied on it to eliminate Galvan's claim of self-defense with respect to C.M.

¶53 Importantly, I believe the majority misstates the test for provocation, maj. op. ¶ 19, because it fails to make clear that it applies only when the defendant

1

goads the victim into making the initial attack. This, I fear, will generate confusion going forward because the majority's articulation of when provocation applies renders the provocation exception essentially indistinguishable from the initial aggressor exception. Moreover, because the majority misstates the test, it never actually identifies the evidence showing that Galvan provoked C.M. to attack him first so that he would have a pretext for hurting her. It cannot do so because there is no such evidence here.

¶54 Because I believe the instruction here was unwarranted regardless of whether the quantum of proof is "some evidence" or a heightened standard, I do not believe we need to resolve the quantum of proof question left open in *Castillo*. Instead, I would simply reverse and remand for a new trial.[1] Accordingly, I respectfully dissent.

## I. The Provocation Instruction Was Unwarranted

## A. Legal Principles

¶55 "The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions." *Castillo*, ¶ 34, 421 P.3d at 1146–47 (citing *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004)). The trial

---

[1] Because I would reverse, I would vacate the court of appeals opinion, including its First Amendment analysis.

court should not, however, "instruct on abstract principles of law unrelated to the issues in controversy, nor . . . on doctrines or principles which are based upon fanciful interpretations of the facts unsupported by the record." *Id.*, 421 P.3d at 1147 (omission in original) (quoting *People v. Alexander*, 663 P.2d 1024, 1032 (Colo. 1983)); s*ee also Barnhisel v. People*, 347 P.2d 915, 917 (Colo. 1959) ("[A]n instruction, although in every respect announcing a correct principle of law, is erroneous if it implies or assumes the existence of evidence not in the record.").

¶56 We review de novo the question of whether there was sufficient evidence to support a challenged instruction. *Castillo*, ¶ 32, 421 P.3d at 1146 (citing *O'Shaughnessy v. People*, 2012 CO 9, ¶ 13, 269 P.3d 1233, 1236).[2]

¶57 In Colorado, a person is entitled to "use a degree of force which he reasonably believes to be necessary" upon another person to defend himself "from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person." § 18-1-704(1), C.R.S. (2020).[3] However, a defendant's

---

[2] I disagree with the majority that we must "view[] the evidence in the light most favorable to giving the provocation instruction." Maj. op. ¶ 33. We have never so held. The majority cites to *People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999), for this standard. In turn, *Silva* cites without analysis to *People v. Cole*, 926 P.2d 164 (Colo. App. 1996), but *Cole* simply does not address or support this proposition.

[3] Section 18-1-704(1) also applies to the defense of a third person. Like the majority, for clarity, I refer simply to self-defense.

3

right to self-defense is not without limits. For instance, a defendant forfeits his right to self-defense if, "[w]ith intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person." § 18-1-704(3)(a). In other words, a defendant cannot claim that he acted in self-defense where he goads the victim into attacking him and then relies on that attack as an excuse to harm the victim. Thus, to warrant an instruction on provocation, the prosecution must establish that the defendant intended to provoke the victim to attack him as pretext to hurt the victim. *People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999). As the court of appeals explained in *Silva*, the provocation exception applies where "1) self-defense is an issue in the case; 2) *the victim makes an initial attack on the defendant*; and 3) the defendant's conduct or words were intended to cause the victim to make such an attack and provide a pretext for injuring the victim." *Id.* (emphasis added). Notably, "[i]n contrast to the initial aggressor limitation, the provocation limitation applies in situations where the defendant was *not* the initial aggressor." *Id.* (emphasis added).

¶58    The majority, however, restates the test for provocation articulated in *Silva* by omitting the requirement that the victim attacked *first*. *See* maj. op. ¶ 19; *id.* at ¶ 19 n.4 ("[S]ection 18-1-704(3)(a) does not limit the exception to a situation in which the victim attacks first. Nor have we ever engrafted such a restriction onto

4

the exception.").[4] In so doing, the majority articulates a test for provocation that is both inaccurate and all but eliminates any distinction between provocation and the initial aggressor exception. The majority's error creates a real risk of confusion. The common law concept of provocation as an exception to self-defense contemplated situations in which the defendant goaded the victim to attack first. *See Bush v. People*, 16 P. 290, 294 (Colo. 1888) (observing that self-defense is not available where a defendant provokes the victim into an affray so that the defendant, under such pretext, may kill the victim) (citing, *inter alia*, *Adams v. People*, 47 Ill. 376, 379–80 (1868) (upholding a jury instruction, stating, "The defendant cannot avail himself of necessary self-defense, if the necessity of that defense was brought on by the deliberate and lawless acts of the defendant, or his bantering [the victim] to a fight for the purpose of taking [the victim's] life, or committing a bodily harm upon [the victim]")).

¶59 By contrast, the initial aggressor exception to self-defense applies in situations where *the defendant* "initiate[s] the physical conflict by using or threatening the imminent use of unlawful physical force." *Castillo*, ¶ 41, 421 P.3d

---

[4] Oddly, the majority cites *Silva* as support in articulating its own version of the test, but simultaneously calls it into question for importing a sequencing requirement that (in the majority's view) is baseless.

5

at 1148. As *Silva* correctly explained, it is the defendant's act of provoking the victim to attack *first* that distinguishes provocation from the initial aggressor exception. 987 P.2d at 914. But under the majority's articulation today, the provocation exception would apply even where the defendant initiated the conflict, so long as the victim used physical force at some point during the affray. By refusing to limit provocation to situations where the defendant goads the victim into attacking first, the majority renders the provocation exception indistinguishable from the initial aggressor exception.

## B. Application

¶60     The trial court erred by sua sponte instructing the jury on the provocation exception. The prosecution never requested such an instruction because there was no evidence of provocation as to either victim.

¶61     During the jury instruction conference, the trial court and parties discussed which portions of the model self-defense instruction applied to the case. The court said that "it seems to me that [a provocation instruction] is applicable in this case and [an instruction on the initial aggressor exception to self-defense] is not." Defense counsel objected and asked the trial court to omit any reference to the provocation exception to self-defense because there was insufficient evidence that Galvan provoked the victims. The prosecutor said it was hard for him to take a position because "we have two different victims." But he *agreed* with Galvan that

6

there was not "any evidence to support that [Galvan] did anything to provoke [C.M.]" and said he was "fine" with not including the provocation instruction.

¶62 When the court pressed the issue, the prosecutor hesitated and then stated that the instruction "could" apply to S.M. but repeated that he did not think there was evidence to support "anything related to C.M." Nonetheless, the trial court included the provocation instruction, concluding that "it's relevant for this case. It supports some of the evidence." The court never stated what evidence supported the instruction.

¶63 The record reveals that the prosecutor was right; there was no evidence to support such an instruction. C.M. testified for the prosecution that, upon returning to Greeley from Denver, Galvan ran toward her with his fist cocked and punched her in the face. Maj. op. ¶ 9. S.M. then began fighting Galvan in defense of her sister. *Id.* By contrast, Galvan's sister, E.C., testified for the defense that C.M. and S.M. came up behind E.C. and that S.M.—not C.M.—began shoving E.C. At that point, Galvan stepped in to defend E.C. by hitting C.M., who was standing behind S.M., *before* C.M. could attack E.C. *Id.* at ¶ 13. Critically, under both witnesses' version of events, *C.M.* did not make the *initial* attack on Galvan or

7

E.C.,[5] as required by the provocation exception. Instead, Galvan struck the first blow to C.M.

¶64 Indeed, even under the majority's test, which omits the requirement that the defendant provoke the victim into making the initial attack, there was no evidence to support a provocation instruction. The majority's conclusion "that Galvan provoked C.M. into using unlawful physical force *against E.C.*," maj. op. ¶ 33 n.10, is entirely unsupported by the record. The majority points to no evidence that Galvan provoked *C.M.* into attacking him or E.C.—not just initially, but at any point during the evening. Nor could it; neither the prosecution nor the defense presented evidence that C.M. used unlawful force against *anyone*. Instead, as discussed above, E.C. testified that Galvan hit C.M., thereby incapacitating her, *before* C.M. used any unlawful force against Galvan *or* E.C.[6]

---

[5] The majority points out that the provocation exception may apply where the victim directs unlawful force toward a third person, rather than toward the defendant. Maj. op. ¶ 33 n.10. Even so, the record contains no evidence that C.M. used unlawful force against either Galvan or E.C., as discussed herein.

[6] Although the majority focuses exclusively on C.M. (presumably because Galvan was acquitted of all charges relating to S.M.), there similarly was no evidence warranting a provocation instruction with respect to S.M. Although witnesses testified that S.M. attacked Galvan after he hit C.M., there was no evidence that Galvan *intended* to goad either C.M. or S.M. into attacking him so that he would have a pretext for injuring them.

8

¶65 In short, because the prosecution never requested a provocation instruction, and because none was warranted in any event, the trial court erred in instructing the jury on the provocation exception to self-defense.

## II. The Instructional Error Was Not Harmless

¶66 Where a defendant objects to a jury instruction, we review for harmless error. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). Under this standard, reversal is required if the error adversely affected the defendant's substantial rights and it is reasonably probable that the error contributed to the defendant's conviction. *Id.* at 348.

¶67 We have repeatedly explained that "superfluous instructions limiting self-defense may be prejudicial." *Castillo*, ¶ 61, 421 P.3d at 1151. This is because "the jury is likely to try to fit facts into an erroneously given instruction." *Id.* In other words, "[d]uring deliberations, it is possible that the jury may have wondered why it was given the instruction, decided that it must have been for some purpose, and forced the evidence to fit the instruction, thereby denying [the defendant] his claim to self-defense." *Kaufman v. People*, 202 P.3d 542, 562 (Colo. 2009).

¶68 Here, the trial court's error in sua sponte instructing the jury on the provocation exception was not harmless. Self-defense was the sole issue at trial. As noted above, the prosecution never argued provocation, never requested that the court instruct the jury on the provocation exception, and twice agreed with the

9

defense that there was no evidence of provocation with respect to C.M. Nonetheless, the court gave a provocation instruction, and one that did not distinguish between C.M. and S.M. This unfounded instruction may well have invited the jury to find provocation with respect to C.M. In other words, the jury likely assumed that the instruction was given for a reason and relied on it to reject Galvan's assertion of self-defense.

¶69 The fact that the prosecution did not argue provocation actually exacerbated the potential for harm in this case. Had the prosecutor argued a provocation theory, the jury would have understood that it applied only in the circumstances identified in *Silva*—namely, where the defendant intends to goad the victim into attacking first, and the victim in fact attacks first. Without that argument, however, the jury was left with an instruction that did not distinguish between the two victims and did not make clear that it applied only if Galvan provoked C.M. into attacking first. Because it is reasonably probable that the trial court's error contributed to Galvan's conviction for second degree assault, the error was not harmless.

## III. Conclusion

¶70 Because the majority articulates a test for provocation that fails to make clear that the defendant must provoke the victim into attacking first, because there was insufficient evidence to support the trial court's sua sponte jury instruction on the

10

provocation exception to self-defense, and because that error was not harmless, I respectfully dissent.

I am authorized to state that JUSTICE GABRIEL and JUSTICE HART join in this dissent.