The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2025

## 2025COA62

### No. 22CA1024, *People v. Manzanares* — Criminal Law — Mandatory Protection Order; Constitutional Law — Right of Familial Association

A division of the court of appeals considers a criminal defendant's challenge to a trial court's order denying his motion to modify a mandatory protection order (MPO) entered against him and naming his biological children as protected parties.  The MPO the defendant sought to modify prohibited him from having any contact whatsoever with his children.

On appeal, the defendant contends that the trial court erred by denying his motion to modify without making the necessary findings to justify the MPO's infringement on his constitutional right to familial association.  Relying on *Salah v. People*, 2024 CO 54, the People respond that the trial court wasn't required to make

such findings because the defendant failed to produce any evidence that he had a substantial relationship with his children.

The division reverses the trial court's order and remands the case for further findings. In reaching its conclusion that further findings are required, the division rejects the People's contention that a legal parent with intact parental rights is required to first make an affirmative showing that they have a substantial relationship with their children before asserting their constitutional right to familial association.

COLORADO COURT OF APPEALS

**2025COA62**

Court of Appeals No. 22CA1024
Jefferson County District Court No. 14CR1955
Honorable Robert Lochary, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donald Joseph Manzanares, Jr.,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

Announced July 3, 2025

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Leah Scaduto, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Donald Joseph Manzanares, Jr., appeals the trial court's order denying his motion to modify a mandatory protection order (MPO) entered against him and naming his children as protected parties.  The MPO prohibited him from having any contact whatsoever with his children.  Manzanares contends that the trial court erred by denying his motion to modify without making the findings necessary to justify infringing on his constitutional right to familial association.  Relying on *Salah v. People*, 2024 CO 54, the People counter that the trial court wasn't required to make such findings because Manzanares failed to produce evidence that he had a substantial relationship with his children.

¶ 2    We agree with Manzanares and reject the People's contention that Manzanares, as a legal parent with intact parental rights, was required to make an affirmative showing that he had a substantial relationship with his children before he could invoke his constitutional right of familial association.  Accordingly, we reverse the order denying Manzanares's motion to modify and remand the case to the trial court for further findings.

## I. Background

### A. Events Leading to the Entry of the MPO

¶ 3    In 2014, Manzanares was arrested for domestic violence against S.M., the mother of his two children, D.M. and A.M. S.M. reported that she was driving Manzanares and their children, and, when she pulled the car over, Manzanares "reached over and choked [her]" and threatened to kill her. S.M. drove to her stepfather's home. She also reported that, a while later, Manzanares entered the home without her consent, began yelling at her, poked her hard in the chest, "grabbed [her] face[,] took [her] down to the ground," and "put his hand around [her] neck again." According to S.M., D.M. and A.M. witnessed the incident in the car, and A.M. witnessed the incident at S.M.'s stepfather's home.

¶ 4    Manzanares was arrested and charged with one count of first degree burglary; one count of second degree burglary; two counts of assault in the second degree; two counts of menacing with a deadly weapon; two counts of child abuse (one count listed D.M. as the victim, and the other count listed A.M. as the victim); and one count of violation of a protection order. (Throughout the remainder of this

opinion, we refer to this criminal case as the domestic violence case.)

¶ 5    In September 2014, the trial court entered the MPO against Manzanares, listing S.M., D.M., and A.M as "victims." In the MPO, the court ordered Manzanares to "refrain from contacting or directly or indirectly communicating with the victim(s)" (the no-contact provision). The MPO is set to expire on September 11, 2025.

¶ 6    In 2015, the domestic violence case went to trial. The jury acquitted Manzanares of first degree burglary, second degree burglary, one count of assault in the second degree, and one count of child abuse concerning D.M. But the jury found him guilty of the lesser included offense of second degree criminal trespass, one count of assault in the second degree, felony menacing, misdemeanor menacing, one count of child abuse concerning A.M., and violation of a protection order. The trial court sentenced Manzanares to eleven years in the custody of the Department of Corrections. A division of this court overturned Manzanares's conviction for child abuse concerning A.M., and the People dismissed the charge on remand. *See People v. Manzanares*, (Colo.

3

App. No. 15CA1497, Nov. 14, 2019) (not published pursuant to C.A.R. 35(e)).

## B. Efforts to Modify the MPO

¶ 7 Manzanares sought to modify the MPO as it pertains to D.M. and A.M. on three occasions. His first attempt was in July 2017, when he filed a pro se motion requesting court-ordered visitation with his children. The trial court denied the motion. In January 2022, Manzanares filed another pro se motion to modify the MPO. This time, Manzanares requested permission to "open a line of communication" with his children. The trial court construed this motion as a Crim. P. 35(b) motion and denied it as untimely filed.

¶ 8 Finally, in April 2022, Manzanares's attorney filed a third motion to modify the MPO, which was later amended. In the amended motion, counsel argued that modification would balance "[Manzanares's] fundamental right to have contact with his own family and children" with "the State's interest in protecting society." The People objected to the motion to modify the MPO, citing the "egregious facts" of the domestic violence case. The People noted that S.M. objected to modification, and in victim impact statements

filed in 2015, neither D.M. nor A.M. indicated that they wanted contact with Manzanares.

¶ 9 The trial court denied Manzanares's third motion to modify. In the order denying that motion, the trial court made the following findings:

- "[Manzanares] choked [the children's mother] while she was driving with [the children] in the car, threatening to kill her. He later entered her residence and assaulted her again. [The children] witnessed all of this."

- While awaiting trial in the domestic violence case, Manzanares allegedly "contacted other inmates and asked them to murder [the children's mother,] so she would not be able to testify in the [domestic violence] case."

- S.M. objected to modifying the MPO to allow Manzanares "to contact the children while they remain minors."

- The requested modification to allow for contact caused the court "serious concerns regarding [the children's and S.M.'s] mental, emotional, and physical safety."

¶ 10    In its order denying the motion, the trial court failed to make findings about Manzanares's right to familial association with D.M. and A.M.  Manzanares appeals the denial of his April 2022 amended motion to modify the MPO.

## II.    Analysis

¶ 11    Manzanares contends that because the MPO prohibits him from having contact with his children, it violates his constitutional right to familial association.  According to Manzanares, the trial court erred by denying his motion to modify the MPO without making the findings necessary to justify the deprivation of this

right.  We agree with Manzanares that the trial court erred by failing to make the required findings.[1]

¶ 12    In analyzing Manzanares's contention, we first address the People's argument that Manzanares's right to familial association wasn't implicated.  We then address the findings the trial court was required to make and the proper remedy based on our conclusion that the findings were deficient.

---

[1] Although the parties don't mention it in their briefing to this court, according to the record, A.M. was born in June 2006, making him a minor at the time the court considered Manzanares's motion to modify the MPO, but he is now over eighteen.  Because A.M. was a minor at the time that the court entered the order on appeal, the fact that A.M. subsequently reached the age of majority doesn't affect our review of the propriety of the court's order as to him.  His intervening emancipation may, however, be relevant on remand. *Compare Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1188-89 (10th Cir. 1985) (holding that a parent has a constitutionally protected interest in their relationship with their adult son), *with Robertson v. Hecksel*, 420 F.3d 1254, 1258-60 (11th Cir. 2005) (collecting cases holding that a parent has no constitutionally protected interest in their relationship with their adult son).  But because the parties didn't raise, much less brief, this issue, we offer no opinion on it.  *See Galvan v. People*, 2020 CO 82, ¶¶ 44-46 (holding that it was error for the division of the court of appeals to reach and resolve an issue that the parties neither raised nor briefed).  Instead, the trial court must consider this issue in the first instance on remand.

## A. Right to Familial Association

¶ 13    The People contend that because Manzanares failed to establish a right to familial association with his children, the trial court didn't err by denying his motion to modify the MPO. We aren't persuaded.

¶ 14    The People cite our supreme court's recent opinion in *Salah* to support their contention that Manzanares's right to familial association wasn't implicated because he didn't produce any evidence that he had a substantial relationship with his children.

¶ 15    In *Salah*, the defendant contended that a condition of his probation violated his right to familial association with his minor nephew. *Salah*, ¶¶ 1-2. The supreme court held that whether a probation condition restricting "contact with an *extended* family member implicates a probationer's right to familial association depends, as a threshold matter, on whether the probationer presents evidence demonstrating the nature of their relationship with that family member." *Id.* at ¶ 41 (emphasis added). The People contend that, like the defendant in *Salah*, Manzanares had an obligation to establish the nature of his relationship with his

8

children as a condition precedent to invoking his right to familial association. We reject this contention.

¶ 16     As the court recognized in *Salah,* Manzanares, as a parent, has a different — and much stronger — presumption of personal attachment to his own children than to more distant relatives. *See id.* at ¶ 22 ("On [the] spectrum of personal attachments, the parent-child relationship is afforded the greatest constitutional protection.") (citing *Troxel v. Granville,* 530 U.S. 57, 66 (2000)). Notwithstanding Manzanares's reprehensible criminal conduct toward the children's mother — some of which the children witnessed — his parental rights remain intact, and he hasn't been adjudicated as unfit. The People don't contend otherwise.

¶ 17     We recognize that the right to familial association isn't absolute, even for biological parents. *See id.* at ¶ 45 (first citing *Moore v. City of East Cleveland,* 431 U.S. 494, 499 (1977); and then citing *Chambers v. Sanders,* 63 F.4th 1092, 1097 (6th Cir. 2023)). But we can't say that Manzanares was required to affirmatively demonstrate a substantial relationship with his own children when his right to familial association was never questioned in the first place.

¶ 18    Accordingly, we reject the People's contention that Manzanares's right to familial association wasn't implicated due to his alleged failure to produce evidence that he had a substantial relationship with his children.

### B.    Whether the Protection Order Infringes on Manzanares's Constitutional Rights

¶ 19    We now turn to the merits of Manzanares's claim. Manzanares contends that the no-contact provision in the MPO violates his constitutional right to familial association. We agree with Manzanares that the trial court failed to make the necessary factual findings to resolve his constitutional claim. More specifically, the trial court failed to make factual findings about how the MPO affected Manzanares's right to familial association, whether it improperly deprived him of this right, and whether there was a less drastic alternative to the MPO that would protect the children's best interests while allowing Manzanares some contact with his children.

### 1.    Standard of Review and General Legal Principles

¶ 20    Whether a trial court properly denied a defendant's motion to modify an MPO generally presents a mixed question of law and fact.

*People v. Zoller*, 2023 COA 117, ¶ 14.  We review de novo whether the trial court's order is constitutional but defer to the trial court's findings of fact unless they are clearly erroneous.  *Id.*

¶ 21     A trial court is required to enter an MPO against any person charged with a crime in violation of title 18 of the Colorado Revised Statutes.  *See* § 18-1-1001(1), C.R.S. 2024.  The MPO will remain in effect "until final disposition of the action."  *Id.*  "'Until final disposition of the action' means until the case is dismissed, until the defendant is acquitted, until the defendant completes the defendant's sentence, or until the defendant's commitment is terminated."  § 18-1-1001(8)(b).

¶ 22     The terms of the MPO depend on the nature of the underlying offense.  If a case involves domestic violence, the court may enter a protection order requiring the defendant to "refrain from contact or direct or indirect communication with [any] alleged victim or witness."  § 18-1-1001(3)(a)(II).  But according to section 18-1-1001(3)(a), the "trial court retains jurisdiction to enforce, modify, or dismiss the protection order until final disposition of the action."  And the defendant "may request a hearing before the court to modify the terms of [the] protection order."  § 18-1-1001(6).

¶ 23　　When an MPO with a no-contact provision infringes on the defendant's right to familial association (as it does here), the provision survives a constitutional challenge *if* the trial court makes specific findings that (1) the provision "is justified by compelling circumstances" and (2) "the purpose of the order cannot be accomplished by less restrictive means." *Zoller*, ¶ 20.

### 2.　The Trial Court Failed to Make Adequate Findings

#### a.　Compelling Circumstances

¶ 24　　We first address the trial court's findings on whether compelling circumstances justified the restriction on Manzanares's right to familial association. From the record, we can't discern that the trial court made any explicit findings on whether compelling circumstances justified the MPO's restriction of Manzanares's rights. But the trial court did make the following findings that could support a conclusion that compelling circumstances justified imposing some degree of limitation on, if not a complete prohibition of, Manzanares's right to familial association with his children:

- D.M. and A.M. witnessed the acts of domestic violence underlying the domestic violence case.

12

- While awaiting trial, Manzanares allegedly solicited other inmates to "murder" the children's mother so that she wouldn't be able to testify in the domestic violence case (though Manzanares was not convicted on that charge).

- S.M. objected to modification of the MPO.

- There were "serious concerns regarding the [the children's] mental, emotional, and physical safety [related to] allow[ing] [Manzanares] to contact them."

¶ 25  These findings — particularly in combination — are certainly relevant to whether compelling circumstances warrant prohibiting or limiting Manzanares's right to familial association with his children.  But there may be other considerations relevant to this analysis that the trial court has not yet considered because the court wasn't focused on the existence of compelling circumstances. Because of the lack of complete findings and the trial court didn't directly consider this issue, we can't determine on this record whether compelling circumstances then existed or currently exist that warrant the imposition of conditions prohibiting or limiting Manzanares's right to familial association with the children.  That is

a question the trial court must consider and determine in the first instance.

### b. Less Restrictive Alternatives

¶ 26 Compelling circumstances alone aren't enough to justify a no-contact provision in an MPO when it infringes on a defendant's right to familial association. *See Zoller*, ¶¶ 20, 27. The trial court must also find that "the purpose of the order cannot be accomplished by less restrictive means." *Id.* at ¶ 20.

¶ 27 In his April 2022 amended motion to modify the MPO, Manzanares didn't explicitly state any available less restrictive means that would still accomplish the purpose of the MPO. But in his January 2022 motion to modify, Manzanares proposed alternatives, such as permitting him to send letters to the children through "a Court Appointed Counselor." Notwithstanding the reference to Manzanares's constitutional right to familial association in his April 2022 amended motion or his proposals of less restrictive means of communication in the January 2022 motion, the trial court didn't make any findings on whether less restrictive means, other than a no-contact provision, were available to accomplish the purpose of the MPO. Again, because of the

absence of findings, we can't determine whether there may be alternatives less drastic than a complete prohibition on any contact that would address whatever compelling circumstances still exist to justify limitations of Manzanares's right to familial association with his children.

### 3. Remedy

¶ 28 Manzanares and the People disagree as to the appropriate remedy. Manzanares contends that because the trial court failed to make adequate findings, we should instruct the trial court to remove D.M. and A.M. as protected parties on the MPO or, alternatively, preclude the court from maintaining the full no-contact provision. The People, on the other hand, contend that the appropriate remedy is to remand to the trial court with instructions to make further findings. We agree with the People.

¶ 29 Manzanares's right to familial association was violated because the trial court declined to modify the MPO without making adequate findings about whether compelling circumstances justify a prohibition or restriction of Manzanares's contact with his children and whether there was a less restrictive alterative to the no-contact provision in the MPO. The trial court must address this violation by

making further findings to determine whether compelling circumstances currently exist and whether less drastic alternatives are available to protect the children's best interests while still permitting Manzanares some contact with them. *See Zoller*, ¶¶ 20, 27. Only the trial court can make these findings. Thus, we remand to the trial court for further factual findings on whether compelling circumstances justify any infringement on Manzanares's rights imposed by the no-contact provision in the MPO and whether less restrictive means than a no-contact provision are available to accomplish the purpose of the MPO.

## III. Disposition

¶ 30 The order is reversed, and the case is remanded to the trial court. On remand, with respect to Manzanares's motion to modify the protection order as to D.M., the trial court must make express factual findings as to whether (1) existing compelling circumstances justify continuing the no-contact provision in the MPO, and (2) the purpose of the MPO may be accomplished by less restrictive means.

¶ 31 As the motion pertains to A.M., the trial court must consider that A.M. turned eighteen since its prior order and determine whether (and if so, how) this fact impacts the findings that the court

16

is required to make, including whether it must make findings under *Zoller* to justify the no-contact provision in the MPO as to him. *See supra*, ¶ 11 n.1. Because the parties didn't raise or address on appeal the implication of A.M. reaching the age of majority, we offer no opinion on how this fact will impact the proceedings on remand. *See Galvan v. People*, 2020 CO 82, ¶ 45 ("Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised.").

JUDGE KUHN and JUDGE SCHUTZ concur.

17