24CA1410 Peo in Interest of EJMH 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1410
El Paso County District Court No. 22JV30248
Honorable Diana K. May, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.J.M.H., a Child,

and Concerning K.H.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Kuhn, J., concurs
Schutz, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

Kenneth Hodges, County Attorney, Shannon Boydstun, Assistant County
Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, K.H. (mother) appeals the judgment terminating her parent-child legal relationship with E.J.M.H. (the child).  We affirm.

## I.     Background

¶ 2     In September 2022, the El Paso County Department of Human Services filed a petition in dependency and neglect regarding the then-newborn child.  The Department alleged that the child tested positive for marijuana and methamphetamine at birth.  The Department was concerned about mother's substance use and involvement in the criminal justice system.  Unfortunately, at the time of the child's birth, mother was diagnosed with a severe and advanced form of cancer that required surgery, radiation, and ongoing chemotherapy.

¶ 3     The juvenile court granted temporary legal custody to the Department, and the child was placed in foster care.  Mother agreed to a deferred adjudication that required her to communicate with the Department, attend supervised family time, engage in substance abuse treatment, develop protective parental capacities, establish self-sufficiency, and participate in life skills services.  Shortly thereafter, the court adopted an amended treatment plan

1

allowing some flexibility regarding urinalysis (UA) testing based on mother's illness.

¶ 4 The Department later moved to terminate mother's parental rights. Within a month of that motion being filed, mother moved to modify her treatment plan to include additional accommodations under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213. The juvenile court granted mother's motion and ordered the Department to provide most of mother's requested accommodations.

¶ 5 The juvenile court then held a two-day contested termination hearing over the course of three months. Approximately twenty-two months after the case opened, the court revoked the deferred adjudication and granted the termination motion.

## II. Statutory Criteria and Standard of Review

¶ 6 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct

or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 7      The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts.  *S.R.N.J-S.*, ¶ 10; *A.S.L.*, ¶ 8.

### III.   Reasonable Efforts and ADA Accommodations

¶ 8      Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her because the Department failed to make reasonable accommodations for her severe illness.  We aren't persuaded.

### A.   Applicable Law

¶ 9      To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family.  *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  "Reasonable efforts" means the "exercise of diligence and care."  § 19-1-103(114), C.R.S.

3

2024.  Appropriate services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard.  § 19-1-103(114).

¶ 10     Under section 19-3-208(2)(b), a department must provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services.  And, if funding is available, section 19-3-208(2)(d) requires a department to provide additional services such as transportation and drug and alcohol services.  However, services must be provided only if they are determined to be necessary and appropriate based on the individual case plan.  § 19-3-208(2)(b), (d).

¶ 11     Additionally, the ADA requires a public entity, such as a county department of human services, to make reasonable accommodations for qualified individuals with disabilities.  *See People in Interest of C.Z.*, 2015 COA 87, ¶¶ 11-12.  Thus, departments and juvenile courts must account for and, if possible, make reasonable accommodations for a parent's disability when providing rehabilitative services.  *People in Interest of S.K.*, 2019

COA 36, ¶ 34. As a result, a juvenile court must consider whether a department made reasonable accommodations under the ADA in determining if it made reasonable efforts to rehabilitate the parent. *Id.*

¶ 12 The parent is responsible for disclosing information regarding their disability and should identify any modifications to the treatment plan that they believe are necessary to accommodate the disability. *Id.* at ¶ 21; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 16 ("For a parent to benefit from a reasonable accommodation, the parent must raise the issue of the ADA's applicability in a timely manner."). In considering whether reasonable accommodations can be made for a parent's disability, the juvenile court's paramount concern must remain the child's health and safety. *S.K.*, ¶ 36. Thus, what constitutes a reasonable accommodation will vary from case to case based on the child's needs, the nature of the parent's disability, and the available resources. *Id.* at ¶ 39.

¶ 13 Last, a parent is ultimately responsible for utilizing the services provided by a department to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*,

259 P.3d 1279, 1285 (Colo. App. 2011). In determining whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

## B. Analysis

¶ 14 The juvenile court found that the Department made reasonable efforts to rehabilitate mother and reunite her with the child. The court also found that the Department made reasonable accommodations for mother's illness as required by the ADA. It concluded that mother's failure to comply with her treatment plan was due to the choices that she made, not her illness or the Department's failure to make reasonable efforts and accommodations.

¶ 15 The record supports the juvenile court's findings. The caseworker testified that she arranged UAs and made several referrals for substance abuse evaluations, supervised family time, and life skills services. The caseworker also testified that

6

throughout the case, the Department provided mother with a total of four cell phones and several bus passes.

¶ 16     Moreover, shortly after the court adopted the initial treatment plan, the caseworker collaborated with mother's counsel to amend it to include accommodations for mother's illness. Specifically, the caseworker amended the plan to ensure that mother's family time referral would remain open no matter how many times mother cancelled or missed family time sessions. The amended treatment plan also stated that any missed UAs wouldn't be automatically considered positive if mother called the caseworker to let her know that she was unable to attend the UA appointment due to her illness. And the Department offered to accept the UAs from mother's cancer treatment providers in lieu of the UAs it set up to show ongoing sobriety.

¶ 17     Later in the case, mother requested additional ADA accommodations, which included providing her with a cell phone with unlimited data; transporting her to and from family time and substance abuse treatment appointments; the option to have virtual family time and substance abuse treatment; and the option to have the child transported to her if she was too ill to attend family time.

The juvenile court found that the Department had already been providing transportation services and cell phones but nonetheless ordered the Department to provide the requested accommodations, except for transporting the child to mother. The court found that this request wasn't in the child's best interests because at the time, mother was homeless, so it was unclear where family time would occur if the Department brought the child to her. And the court noted that the requested transportation was unnecessary because mother could have virtual family time if she was too ill to attend in person.

¶ 18 The Department complied with the juvenile court's order for accommodations by ensuring that mother's family time and life skills referrals included transportation services, providing mother with the option of video parenting time when she was unable to travel for visits, and providing her with an additional phone with unlimited minutes and data.

¶ 19 Despite these accommodations, the record shows that mother didn't comply with her treatment plan. The caseworker testified that mother didn't regularly attend court or team meetings, rarely responded when she reached out to her, and didn't sign releases of

information until seven months into the case. Mother didn't complete a substance abuse evaluation or show that she was sober, either by providing UAs or allowing the Department to access her medical records. And she didn't engage in the provided life skills services.

¶ 20 Further, the caseworker estimated that mother missed at least half of her family time sessions throughout the case, while the family time supervisor estimated that she missed around seventy-five percent of the scheduled sessions. The caseworker testified that even after she made the transportation referral, mother didn't utilize it. And the family time supervisor testified that mother generally didn't contact her to let her know when she was unable to attend or to request a make-up session.

¶ 21 Although mother argues that the Department failed to make reasonable efforts and provide ADA accommodations, she doesn't identify any specific services or accommodations that were lacking. And because the juvenile court's findings that the Department made reasonable efforts and provided ADA accommodations are supported by the record, we discern no basis for reversal.

## IV.  Additional Time

¶ 22    Mother also contends that the juvenile court erred by finding that there were no less drastic alternatives to termination when it could have allowed mother more time to work on her treatment plan given her medical condition.  We construe this argument as a challenge to the court's finding that mother couldn't become fit within a reasonable time, not a challenge to the court's finding that there was no less drastic alternative to termination.  *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (stating that a less drastic alternative analysis considers whether any placement, short of termination, would be in the child's best interest).  Nonetheless, we discern no basis for reversal.

## A.  Applicable Law

¶ 23    A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights.  *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).  The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan varies from case to case.  *Id.*  But a reasonable time isn't an indefinite time, and it must be determined

by considering the physical, mental, and emotional conditions and needs of the child.  *S.Z.S.*, ¶ 25.

¶ 24    In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider whether any changes occurred during the dependency and neglect proceeding. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006).  And when a child is under six years old, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that such children be placed in a permanent home as expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123(1)(a), 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25.

### B.    Analysis

¶ 25    The juvenile court considered whether mother could become fit within a reasonable amount of time but ultimately concluded she couldn't.  The court noted that the EPP provisions applied and that the case had been open for twenty-two months.  The court found that mother didn't address the issues that brought her family to the Department's attention and that based on mother's refusal to engage in services throughout the case, she wouldn't be able to

address those issues even if given more time. The court also found that it wouldn't be reasonable or in the child's best interests to allow mother additional time based on the child's young age and mother's unwillingness to cooperate or engage in services.

¶ 26 The record supports the juvenile court's findings. By the time of termination, approximately fourteen months had passed since the court adopted mother's amended treatment plan, but she still hadn't successfully resolved the Department's concerns. She hadn't completed any substance abuse treatment, provided proof of ongoing sobriety, or engaged in life skills services. And the caseworker, who the court qualified as an expert in child protection and welfare, opined that based on mother's lack of progress throughout the case, she didn't think that mother would change within a reasonable amount of time. The caseworker testified that even if mother began engaging in services, it would take at least six months for her to address the Department's concerns, and she opined that allowing more time wouldn't be in the child's best interests based on her age and need for permanency. Indeed, by the time of termination, the child had been out of the home for her entire twenty-two-month life.

¶ 27    We reject mother's argument that the juvenile court should have allowed more time because "a majority of the accommodations . . . required for [mother's] illness-related disabilities were not implemented until very late" in the proceedings.  True, the court granted mother's motion for ADA accommodations only three months before the termination hearing. But in that order, the court found, with record support, that the Department had been providing transportation services and cell phones to mother — the two main accommodations she requested. Further, the record indicates that during the five months following the court's order that the Department provide the additional accommodations mother requested, she still didn't engage in any substance abuse treatment or life skills services, provide proof of ongoing sobriety, or consistently attend family time.

¶ 28    Finally, we reject mother's argument that the juvenile court should have allowed mother more time to work on her treatment plan because the court didn't consider the importance of the child's relationship with mother or the lack of evidence showing that "maintaining the parent-child relationship would harm the child in any way."  To the contrary, the court found that mother hadn't

made efforts to bond with the child or put the child's needs first. While it's true that the family time supervisor testified that the child was comfortable with mother and that family time generally went well, the caseworker opined that, based on mother's "lack of engagement with family time," mother hadn't created a bond with the child. The caseworker also opined that, based on mother's lack of engagement in treatment, she "would not be a proper, healthy caregiver for [the] child." And we don't reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

¶ 29 Based on the foregoing, we conclude that the juvenile court properly analyzed whether mother could become fit within a reasonable time. And because the court's determination is supported by the record, we won't disturb it.

## V. Disposition

¶ 30 The judgment is affirmed.

JUDGE KUHN concurs.

JUDGE SCHUTZ specially concurs.

14

JUDGE SCHUTZ, specially concurring.

¶ 31     I agree with the majority's conclusion that the juvenile court did not err by finding and concluding that the El Paso County Department of Human Services used reasonable efforts to render mother a fit parent.  I also agree that mother was provided a reasonable amount of time to comply with the treatment plan.

¶ 32     But I write separately to express my concern with the majority's decision to change the issue that mother actually presented on appeal — whether the district court erred by failing to conclude that there was a less drastic alternative to termination — into a contention that mother chose not to raise on appeal — whether she had a reasonable period to comply with the treatment plan.

¶ 33     Procedurally, converting an issue brought by a party into an issue that the party did not raise violates the party presentation principle.  As both the United States Supreme Court and the Colorado Supreme Court have reminded us, the party presentation principle is a core component of our adversary system.

> *See Greenlaw v. United States*, 554 U.S. 237
> (2008) ("In our adversary system, in both civil
> and criminal cases, in the first instance and on

15

appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present . . . . [A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'") (quoting *Castro v. United States*, 540 U.S. 375 (2003) (Scalia, J., concurring in part and concurring in judgment)); *accord United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020); *Galvan v. People*, 2020 CO 82, ¶ 45.

*Compos v. People*, 2021 CO 19, ¶ 35.

¶ 34    Mother is represented in this appeal by an attorney experienced in presenting dependency and neglect appeals. Certainly mother's counsel knew the difference between "a reasonable amount of time to comply with the treatment plan" contention versus "a less drastic alternative" contention. Counsel chose to present a less drastic alternative argument. Principles of party presentation dictate that we address the argument actually presented by mother's counsel. *See id.*

¶ 35    I appreciate that a less drastic alternative argument sometimes presents, at least indirectly, the question of whether a parent was afforded a reasonable amount of time to comply with a

16

treatment plan. But the two issues are not the same. If there is a reasonable alternative to termination of a parent's rights that is in the child's best interest — irrespective of whether mother was afforded a reasonable period to comply with the treatment plan — the court is bound to adopt the less drastic alternative. *See People in Interest of C.Z.*, 2015 COA 87, ¶ 61 ("The court must consider and eliminate less drastic alternatives before terminating parental rights."); *People in Interest of M.M.*, 726 P.2d 1108, 1123 (Colo. 1986) ("Clearly, adherence to the statutory criteria for termination requires a trial court to consider less drastic alternatives and to reject those alternatives as unavailing before entering an order of termination."). By collapsing the less drastic alternative contention into a lack of reasonable time contention, we deprive mother of the ability to raise these issues separately.

¶ 36   Substantively, by converting the less drastic alternative contention into a reasonable time contention, we also fail to give full recognition to the extraordinary importance of family connections. *See* § 19-1-102(1)(a)-(b), C.R.S. 2024 (Among the purposes of the Children's Code are "[t]o secure for each child subject to these provisions such care and guidance, preferably in his own home, as

17

will best serve his welfare and the interests of society" and "[t]o preserve and strengthen family ties whenever possible, including improvement of home environment."). If a child can be placed with a provider who is willing to accept the placement without a termination of parental rights, it leaves open the possibility that a parent may eventually make transformations that allow them to have a meaningful and positive presence in their child's life. Doing so protects the familial and legal relationship between children, their parents, and their extended family. Of course, leaving a case open also creates the possibility that the child may not be able to achieve a sense of well-being and permanence that is essential to their mental and emotional health and development. *See* § 19-3-100.5, C.R.S. 2024 (discussing the importance of achieving timely permanence for children, particularly those under the age of three). But the appropriate balance between these competing concerns is best addressed by our juvenile courts making an informed assessment about whether, in a given case, holding open the prospect of a future bona fide relationship between the child and their family outweighs the benefits of achieving permanency for the child through a formal termination of parental rights.

¶ 37     I also appreciate that a less drastic alternative inquiry is usually made in the context of whether there is a placement provider that will accept placement of the child without a termination of parental rights. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 ("[A] less drastic alternative analysis considers whether *any* placement, short of termination, would be in the child's best interest."). But a less drastic alternative can also exist even if no change in the current placement is contemplated, provided the current placement is in the child's best interest. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27 ("[I]f a proposed alternative to termination is to be deemed viable, it must not only be adequate, it must be in the child's best interests."). For example, suppose the current placement was willing to accept an allocation of parental rights (APR) while leaving some parental rights in place. That APR would be an appropriate less drastic alternative so long as the current placement was consistent with the child's best interests.

¶ 38     In addition, leaving a case open when there is a reasonable possibility that a parent may make future progress, even though they have thus far failed to make changes within a reasonable time,

may be a less drastic alternative if it is in the child's best interest. On the other hand, a juvenile court may conclude that there is no less drastic alternative to termination if leaving the case open for an extended period would be damaging to the child's best interest or, relatedly, that it would jeopardize a permanent placement that is in the child's best interest. *See id.*; *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011) (noting that a court may consider whether a placement option prefers adoption rather than an APR in its decision to reject less drastic alternatives).

¶ 39    That is what happened here. The juvenile court recognized that mother was making a less drastic alternative argument. The court addressed that claim head-on and made specific findings explaining why leaving this case open in the hope that mother would comply with her treatment plan in the future was not a less drastic alternative. In reaching its conclusion, the court did not rely on a conclusory assertion that "the child needs the permanency that only adoption can provide," or some similar bromide. *See A.M.,* ¶ 42 ("It is . . . the better practice for a trial court to make express findings regarding less drastic alternatives — as the trial court did here — but we will not require the trial court to do so.").

¶ 40    Rather, the court made pertinent findings based on the

evidence presented:

> The Court has considered less drastic
> alternatives.  Mother did request less drastic
> alternatives in January 2024.  Since January,
> Mother has not demonstrated any desires to
> change to allow for more time for less drastic
> alternatives.  Her visitation has gotten less
> frequent. . . .
>
> Mother has not shown any proof of sobriety.
>
> Mother has not been able to consistently see
> her child.  The most visits Mother has had are
> two in the month of March.
>
> No additional time is reasonable based on the
> age of the child, that will change Mother's
> position and her willingness to cooperate and
> do what is in the best interest of her child.
>
> This case has been open for 22 months.
>
> Mother has no interest in addressing the
> issues that caused this case to open or to
> address her substance abuse.
>
> There has not been any bonding with the child.
>
> Mother has no interest in putting the child's
> needs first.
>
> Even if the Court granted six additional
> months, Mother would not progress in this
> case.

Mother is unable to meet the child's needs and she has been unsuccessful in completing her treatment plan.

¶ 41     Based on these findings, the court reasoned:

[T]he foster family has continuously engaged with the child and met her needs. Furthermore, . . . it's the only home she's known, it's the only parents she's known. They meet her needs and the Court finds that the termination of her parental rights serves the emotional, mental, and physical needs of [the child]. With primary consideration given to the physical, mental, and emotional conditions, the Court finds the department has evaluated and ruled out a reasonable number of identified alternative placements. The Court has considered and eliminated all reasonable less drastic alternatives to the termination and the Court finds there are no less drastic alternatives that are in the best interest of this child based on her age, based on what has specifically occurred in this case.

¶ 42     These findings and conclusions are grounded in the evidence, and they support the trial court's conclusion that there was no less drastic alternative to termination of mother's parental rights.

¶ 43     Thus, because I conclude that the Department used reasonable efforts and there was no less drastic alternative to termination of mother's parent rights, I concur with the majority's conclusion that the termination order must be affirmed.